LEIB v. HALLIGAN et al.

(Circuit Court of Appeals, Ninth Circuit. October 9, 1916.)

No. 2747.

1. COUNTERFEITING ⟺5—NATURE OF OFFENSE—POWERS OF CONGRESS—MONEY.
    Congress, under its constitutional power to provide for the punishment of counterfeiting the securities of the United States, has power to interdict the uttering of bank notes made in the similitude of the Treasury notes of the United States, and may make illegal the possession of such notes with intention to sell or use them, irrespective of the question of whether the notes are valid obligations.
    [Ed. Note.—For other cases, see Counterfeiting, Dec. Dig. ⟺5.]

2. COUNTERFEITING ⟺2—MONEY—OFFENSES.
    Penal Code, § 150 (Act March 4, 1909, c. 321, 35 Stat. 1116 [Comp. St. 1913, § 10320]), which was Rev. St. § 5430, enacted June 30, 1864, pro-

⟺For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

vides that any person who shall have in his possession, except under authority from the Treasurer or other proper officer, any obligation or other security made or executed, in whole or in part, after the similitude of any obligation or other security issued under the authority of the United States, with intent to sell or use the same, shall be guilty of an offense. The act, further, makes it unlawful for persons to have in their possession for use plates for printing obligations or securities of the United States, etc. Accused was charged with having in his possession an obligation made in part after the similitude of an obligation made under authority of the United States, it being made by attaching and fastening together, back to back, notes purporting to have been issued by the Augusta Insurance & Banking Company of Georgia. The indictment set forth that the obligation as prepared bore on each side words to the effect that the Georgia bank would pay $10 to bearer on demand, and that the instruments bore the date 1860. *Held*, that under the act it is not necessary that there shall be a fraudulent or felonious intent; it being sufficient if accused has in his possession, with intent to use or sell, a paper made or executed, in whole or in part, after the similitude of any obligation or other security issued by the United States, and hence, the instrument, as composed of the two notes, pasted back to back, being similar to a legal tender note, accused is guilty, though the notes in his possession antedated the legal tender notes.

[Ed. Note.—For other cases, see Counterfeiting, Cent. Dig. §§ 1–4; Dec. Dig. ☞2.]

3. HABEAS CORPUS ☞85(1)—PRESUMPTIONS.

On habeas corpus prayed for on the theory that the indictment did not charge an offense, it will be presumed, accused having been convicted, that the jury found that the averments of the indictment were established by the evidence.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 77, 78; Dec. Dig. ☞85(1).]

Appeal from the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Application by George Leib for a writ of habeas corpus against O. P. Halligan and another. From a judgment denying the writ, applicant appeals. Affirmed.

The appellant appeals from the order of the court below, denying him a writ of habeas corpus on his petition, whereby he sought his discharge from imprisonment on the ground that the indictment under which he was convicted stated no offense against the United States. He was indicted under section 150 of the federal Penal Code. Tht first count of the indictment alleged, in substance, the following: That the said defendant "did knowingly and feloniously have in his possession, with intent to use the same and thereby to defraud some person, or persons, to the grand jury unknown, * * * a certain obligation made in part after the similitude of an obligation issued under the authority of the United States, * * * being then and there made by attaching and fastening together, back to back, two notes purporting to have been issued by the Augusta Insurance & Banking Company, Ga., of the denomination of $10 each, * * * by the use of paste and other substance." The indictment then set forth the printed or engraved matter appearing on the paper, both sides of which were identical, to the effect that: "The Georgia Augusta Insurance and Banking Co. will pay ten dollars to the bearer on demand. Robert Walton, Cashr. Wm. M. D. Antigna, Prest"—also the date March 10, 1860, and twice on each side, the figures "10." The indictment alleged that the instrument was in form, color, size, and in the manner and style of display of the printing and engraving thereon, and in its general appearance made and intended to be made after the simili-

tude of an obligation issued under the authority of the United States, "that is to say, after the similitude of a United States legal tender note of the denomination of $10, he * * * well knowing said obligation not to be a genuine and lawful obligation issued under the authority of the United States, and with the intent * * * to use the said obligation by uttering the same as and for a lawful obligation issued under the authority of the United States."

George Leib, in pro. per.

Clay Allen, U. S. Atty., of Seattle, Wash., and George P. Fishburne, Asst. U. S. Atty., of Tacoma, Wash., for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1, 2] Section 150 of the Penal Code, which was section 5430 of the Revised Statutes, was enacted June 30, 1864, in an act entitled "An act to provide ways and means for the support of the government, and for other purposes." 13 Stats. 218. The provision thereof which, with the change noted hereafter, is now section 150 of the Penal Code defines a number of offenses committed by: (1) Any one who shall use, or suffer to be used, for printing a plate from which has been, or may be, printed any obligation or other security of the United States. (2) Any one who shall sell or import such plate with intent to use the same for printing. (3) Any one who shall have in his control or possession any such plate, with intent to use the same, or suffer the same to be used in forging or counterfeiting any such obligation or other security. (4) Any one who "shall have in his possession, except under authority from the Treasurer or other proper officer, any obligation or other security made or executed in whole or in part, after the similitude of any obligation or other security issued under the authority of the United States, with intent to sell or otherwise use the same." (5) Whoever shall make a print or photograph of any such obligation or security, or who shall sell or import the same. (6) Whoever, unauthorized by the Secretary, shall have and retain in his control or possession a distinctive paper which has been adopted by the Secretary of the Treasury for the obligations and other securities of the United States.

Upon the question whether the possession of a state bank note or a Confederate bank note may constitute the offense which is made punishable by the fourth clause of section 150, the authorities are in conflict. In United States v. Williams (D. C.) 14 Fed. 550, Judge Dyer held that the words of the statute, "any obligation or other security," must be construed to mean one which on its face purports to be an executed instrument, and that a blank obligation of a mining company, made in similitude of a government bond, but without signature of president or secretary, was not an obligation or security within the meaning of the statute. In United States v. Sprague (D. C.) 48 Fed. 828, the instrument resembled in color, style of printing and engraving, and in general appearance a 5—20 government bond, but it purported to be, not an obligation of the United States, but an obligation of a mining company, though not bearing the signature of any officer of the company. The court ruled that, to constitute the offense, it is not essential that the fraudulent bond or instrument shall, on its face,

purport to be an obligation of the United States, but held that a conviction could not be had upon the instrument, for the reason that, being unsigned, it was not an "obligation or security." In United States v. Stevens (D. C.) 52 Fed. 120, the defendant had in his possession a note issued by a state bank, but the bank had become insolvent and the note worthless. It was charged in the indictment that the note was engraved and printed after the similitude of a United States Treasury bank note. The court held that the possession of such a note, with intent to sell or otherwise use it, constituted an offense under the statute, and that the question of the similitude of the note to an obligation or security of the United States should be determined by the jury. In United States v. Kuhl (D. C.) 85 Fed. 624, the obligation was a Confederate States note, but in its general shape and size it resembled a national bank note, and it bore on its face a vignette and other engraving similar to those found on national bank notes. The court held that while it might occur that the resemblance of a Confederate States note to a note of the national currency, in grouping of vignette, engraving, printing, figures, etc., might be such as to justify the submission to the jury of the question whether the similitude contemplated by the statute exists, an ordinary Confederate States note does not bear that similitude to the national currency. The court said:

"But it will not do to lay down the broad rule that, whenever the similarity just stated exists, there therefore exists a 'similitude' such as the statute contemplates; else all bank notes heretofore issued under state statutes will be found to be obnoxious to the provisions of the statute, and such a holding would prohibit the use of all such bank notes. The framers of the statute could not have thus intended. When we look at the note in question, we find a broad band across one end of its face, whereon the word 'Five' appears in large letters. On its face the words 'The Confederate States of America' appear in large letters. * * * There is, in vignette, in engraving, in lettering, in fact in the detail of the face of the note, no special resemblance whatever to the notes or bills 'issued under authority of the United States.' * * * Congress did not attempt or intend to prohibit and make criminal the issuance of bills by banks, wherever authorized to issue same by state law. To construe the statute as thus claimed would make the possession by the officers of such bank of its own bank notes a crime under such statute."

In United States v. Fitzgerald (D. C.) 91 Fed. 374, it does not appear what the instrument was or purported to be. The court submitted to the jury the question whether or not the printing or the engraving on the paper was in the similitude of any government obligation or security, and said that the resemblance was sufficient for the purposes of conviction if they believed that it would probably deceive a person taken unawares in dealing with a person whom he believed was acting honestly. In United States v. Barrett (D. C.) 111 Fed. 369, Judge Amidon, in a very carefully considered and exhaustive opinion, after reviewing the history of the legislation, held that the possession of a Confederate bill is not a violation of the statute, but that to constitute a violation thereof, the instrument must have been intended in its inception to simulate some obligation or security of the United States, and that the general likeness which one form of money bears to another is not sufficient, but something more is required than gen-

eral appearance or adaptability to deceive. The decision in that case seems to have been influenced, to some extent, by the fact that the statute related only to such instruments as are "engraved and printed" in the similitude of government obligations. The court said:

"Engraving and printing is the only feature which the language of the section covers, the only feature which, as the history of the statute demonstrates, it was intended to cover."

Since that decision, and possibly as the result thereof, Congress has changed the language of the statute, and substituted for the words "engraved and printed" the words "made or executed in whole or in part," and thereby it has broadened the scope of the statute. In United States v. Conners (D. C.) 111 Fed. 734, Judge Bellinger held that the possession of a bank note issued by a state bank constituted no offense against the United States, and said:

"The bills described in this indictment are not in the similitude of any obligation issued by the United States, and the statement in the indictment that they are so does not countervail the facts alleged, which show the contrary."

In United States v. Pitts (D. C.) 112 Fed. 522, Judge De Haven followed the decisions of Judge Amidon and Judge Bellinger. In United States v. Webber (D. C.) 210 Fed. 973, Judge Rudkin, after considering the conflicting authorities, held, in a case in which the paper involved purported to be issued by the "Bank of the Empire State," that it was not necessary that the fraudulent obligation or security should purport on its face to be an obligation or security issued under the authority of the United States, nor that the similitude or resemblance should be so great as to deceive experts or cautious men; that it was sufficient if the fraudulent obligation bears such a likeness to any of the genuine obligations or securities of the United States as is calculated to deceive an honest, sensible, and unsuspecting person of ordinary observance and care in dealing with a person supposed to be upright and honest.

It will be seen that the line of division of the decisions is on the question whether or not the forbidden instrument must be one which on its face purports, in whole or in part, to be a government obligation, or so closely resembles one as to show that it was made with the intention to simulate it. In ascertaining the intention of Congress it is significant that to constitute the offense defined in the fourth clause of the section, it is not necessary that there shall be a fraudulent or felonious intent. It is sufficient if the accused has in his possession, with the intent to use or sell, the paper which is there described. What the character of that paper must be is not, we think, necessarily ascertained from the other provisions of the section which make unlawful the possession or use of plates from which government obligations may be printed. Nor do we think that the language of the fourth clause, or of any other provision of the section prohibiting acts which might result in forging or counterfeiting United States securities, warrants the conclusion that the fourth clause was intended to be limited to those instruments only which purport to be securities or obligations of the United States, or which so closely resemble them in gen-

eral appearance that they may be said to be made or executed, in whole or in part, after the similitude thereof. In this view it is immaterial whether or not the instrument was criminal in its inception, or was intended to simulate any security of the United States. Possession of the instrument being positively prohibited by statute, guilty intent is not an essential element of the offense, and there is no necessity for any specific intent or motive except the intention to use or sell. Congress, under its constitutional power to borrow money on the credit of the United States and to "provide for the punishment of counterfeiting the securities of the United States," had the power, of course, to interdict the uttering of bank notes made in the similitude of the Treasury notes of the United States, and it follows that it had the power to make illegal the possession of such bank notes with the intention to sell or use the same, irrespective of the question whether they were the notes of solvent banks and of value equal to that of the Treasury notes of the same denominations. This construction of the statute renders illegal the act or occupation of one who has in his possession Confederate States bank notes, or state bank notes, with the intention to sell the same as curios, provided that such notes are, as was charged in the case at bar, in their general appearance made after the similitude of government obligations, for the tendency of such sale and distribution of such paper is to place the same in circulation where it may be used to deceive and defraud. Congress has the same power, and has exercised it to prohibit the possession of "anything whatsoever" in the likeness or similitude as to design, color, or inscription thereon, of any of the coins of the United States with the intent to use, sell, or give away the same.

We reach the conclusion that it is immaterial whether or not the instrument was criminal in its inception or was intended to simulate any security of the United States, or in any of its features purports to be an obligation or security of the United States.

[3] It follows from that conclusion that the judgment here appealed from must be affirmed, for we must take it to be true, as charged in the indictment, and as found by the jury, that the note which the appellant had in his possession, but which we have no opportunity to inspect, was made after the similitude of a United States legal tender note, and that there was such similarity of shape, size, and color, or in the grouping of words, figures, or vignettes as to present the similitude which brings an instrument within the condemnation of the statute, although it cannot, of course, be shown, as was charged in the indictment, that the note was "intended" to be made after the similitude of a legal tender note, for the note was issued in 1860, and before the issue of the legal tender notes.

The judgment is affirmed.

ROSS, Circuit Judge (concurring). I agree to the judgment of affirmance. The sole question presented on the appeal being whether the indictment under which the appellant was convicted states an offense against the United States, it is manifest that we are limited to

a consideration of the charge contained therein, which is, in substance, that at a certain specified time he knowingly and feloniously had in his possession, with intent to use, and thereby to defraud some person, or persons, to the grand jury unknown, two notes purporting to have been issued by the Augusta Insurance & Banking Company of Georgia, of the denomination of $10 each, fastened together by paste or other substance, back to back, which notes were in form, color, size, and in the manner and style of display of the printing and engraving thereon, and in their general appearance made, and intended to be made, after the similitude of an obligation issued under the authority of the United States—

"that is to say, after the similitude of a United States legal tender note of the denomination of $10, he  *   *   *   well knowing said obligation not to be a genuine and lawful obligation issued under the authority of the United States, and with the intent  *   *   *   to use the said obligation by uttering the same as and for a lawful obligation issued under the authority of the United States."

The written description of the instruments contained in the indictment being supplemented by the charge that in their form, color, size, manner, and style of display and engraving thereon, and in their general appearance, they were made, and intended to be made, after the similitude of an obligation issued under the authority of the United States, and that the possession of said instruments by the defendant was felonious, and with the intent to use and thereby defraud some person, or persons, to the grand jury unknown, I think it clear that it cannot be properly held as a matter of law that the requisite resemblance or similarity does not exist. That question was decided by the jury against the defendant, and as a matter of course its conclusion cannot be reviewed on a writ of habeas corpus. As said in the opinion of the court:

"We must take it to be true, as charged in the indictment and as found by the jury, that the note which the appellant had in his possession, but which we have no opportunity to inspect, was made after the similitude of a United States legal tender note, and that there was such similitude of shape, size, and color, and in the grouping of words, figures, or vignettes, as to present the similitude which brings an instrument within the condemnation of the statute, although it cannot, of course, be shown, as charged in the indictment, that the note was 'intended' to be made after the similitude of a legal tender note, for the note was issued in 1860 and before the issue of the legal tender notes."

Whether by the statute upon which the indictment is based the possession of Confederate States bank notes or state bank notes, with the intent to sell the same as curios, provided that such notes are made after the similitude of government obligations, is prohibited and made a criminal offense is a question which, in my opinion, does not arise upon the record, and therefore I express no opinion upon it.