**UNITED STATES of America,**
**Appellee,**

v.

**Charles SMITH, Jr., Appellant.**

**No. 8887.**

United States Court of Appeals
Fourth Circuit.

Argued March 25, 1963.

Decided May 21, 1963.

———◇———

Terry H. Davis, Jr., Norfolk, Va. (court-assigned counsel), for appellant.

Roger T. Williams, Asst. U. S. Atty. (C. V. Spratley, Jr., U. S. Atty., and James A. Oast, Jr., Asst. U. S. Atty., on brief), for appellee.

Before BOREMAN, BRYAN and BELL, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge.

A counterfeited obligation of the United States was unlawfully possessed by appellant Charles Smith, Jr., the District Court found and so convicted him under 18 United States Code, § 472. This statute reads:

"Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both."

The indictment described the alleged deception as:

" * * * a certain counterfeited obligation of the United States; to-wit, a Federal Reserve Note of the denomination of $10.00, containing the portrait of Hamilton and signed John W. Snyder, Secretary of the Treasury, which said obligation had been printed in reverse."

Two imprinted paper slips were adduced in evidence to prove the charge, but we do not think they support the indispensable allegation of a "counterfeited obligation of the United States", for they have too little likeness to the genuine.

In our view, no consideration need be given the questions raised in the District Court of the legality of the seizure of the slips and the intent requisite under the statute. The papers were found in Smith's automobile along with other paraphernalia, all of which he admits were used in a confidence or "flim-flam" game —the scheme involved the sale of a machine to make money. The mechanics of it, as explained by the Government agent, would ordinarily have consisted of spreading a fluid of some kind on the face of genuine paper currency to soften the ink and pressing the wet currency

 

upon blank paper, thus leaving on the paper a reversed impression of the bill. This process would in turn be followed with the other side of the bill. These negatives would then be employed to produce positive copies of the paper money. Cf. Webb v. United States, 216 F.2d 151 (6 Cir. 1954).

The slips in evidence are seemingly a step in this method of reproduction. Each is the size of a $10.00 Federal Reserve Note, representing respectively the obverse and reverse sides of the note. The back of each slip is entirely blank. The two slips had not been pasted together and did not give the appearance of a single bill. The facsimile signatures, pictures, figures, words of amount or other symbols are quite faint and, most significant, all of them read backwards.

The prosecution stresses that only two elements must be established to convict: (1) possession and (2) intent to defraud the United States or, indeed, anyone. But this argument assumes the indispensable basis of the offense, a "counterfeited obligation of the United States". "Counterfeited" means imitated, simulated, feigned or pretended. 2 Oxford Dictionary 1066 (1933 ed.). The very word connotes a similitude, without which there is no counterfeit. Here the slips do not have the appearance of an obligation of the United States. There is scarcely a resemblance, much less an imitation. They are just too crude to mislead—an undisguised and rude forgery. The quality of the paper alone proclaims them spurious. Hence they are not "counterfeited" in fact.

Nor in law do these articles amount to counterfeits, for they are not of such falsity in purport as to fool an "honest, sensible and unsuspecting person of ordinary observation and care." United States v. Lustig, 159 F.2d 798, 802 (3 Cir. 1947), rev'd on other grounds, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949); United States v. Weber, 210 F. 973, 976 (W.D.Wash.1913).

Our conclusion is reached solely upon the slips in evidence here and the statute on which the indictment was found. These features distinguish this case from decisions involving articles found in fact to be similar to an obligation of the United States, or decisions based on other though related statutes, e. g. Webb v. United States, supra, 216 F.2d 151 and United States v. Lustig, supra, 159 F.2d 798. In this connection it is to be emphasized that the instant statute, so far as it is now before us, denounces possession of a counterfeited obligation—not the possession of means of counterfeiting, nor the act of counterfeiting.

The conviction must be set aside and a judgment of acquittal now entered.

Reversed and final judgment.