UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert Arley JOHNSON, Defendant-Appellant.

No. 24819.

United States Court of Appeals,
Ninth Circuit.

Oct. 9, 1970.

Dennis L. Boaz (argued), Legal Dept., AC Transit, Oakland, Cal., Robert Arley Johnson, for the defendant-appellant.

Gregory E. Fischbach (argued), Asst. U. S. Atty., Robert L. Meyer, U. S. Atty., David Nissen, Chief, Criminal Div., David P. Curnow, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before HAMLEY and MERRILL, Circuit Judges, and THOMPSON, District Judge.*

THOMPSON, District Judge:

Appellant Johnson was convicted of two charges. Count I alleged fraudulent uttering and passing of one $10 and one $5 counterfeit Federal Reserve Notes. Count II alleged possession with intent to defraud of two $5 and one $20 counterfeit Federal Reserve Notes. Concurrent sentences were imposed under the two counts.

It is important to observe that both charges were drawn under 18 U.S.C. §

---

* Hon. Bruce R. Thompson, United States District Judge, Reno, Nevada, sitting by designation.

472 [1] relating to "counterfeit \* \* \* obligation(s) \* \* \* of the United States."

The evidence with respect to the first count showed that defendant used the counterfeit $5 and $10 notes to pay a door-to-door salesman for a magazine subscription. The two bills were zeroxed reproductions of both sides of genuine currency pasted together. While they certainly are not good counterfeits, they are unquestionably imitations of genuine bills which resemble genuine bills and which might, under favorable circumstances, be uttered and accepted as genuine. They were so accepted by the magazine salesman in this case. Thus, with respect to the first count, Appellant's reliance upon United States v. Smith, 318 F.2d 94 (4th Cir. 1963), is misplaced. The test of the *Smith* case is met. The two counterfeit bills bear such a likeness or resemblance to genuine currency "as is calculated to deceive an honest, sensible and unsuspecting person of ordinary observation and care when dealing with a person supposed to be upright and honest." United States v. Weber, 210 F. 973 (W.D.Wash.1913); United States v. Lustig, 159 F.2d 798 (3rd Cir. 1947); United States v. Smith, 318 F.2d 94 (4th Cir. 1963). Therefore, Appellant's specification of error that the trial court should, as a matter of law, have declared the exhibits not counterfeit obligations of the United States cannot be sustained.

The exhibits received in evidence in support of the second count are different. They are zeroxed reproductions of only one side of a genuine Federal Reserve Note. They were seized when defendant tried to dispose of and secrete them while waiting to be booked at the police station. They are on poor paper, the ink is bad, they have a pinkish color, and, as stated, only one side is printed, the reverse side being blank, pinkish paper. There is no evidence that defendant intended to use, pass or utter them as genuine, a kind of evidence which we think is important in cases involving bad or borderline counterfeits not only on the issue of intent to defraud but on the issue of the quality of the counterfeit, that is, whether it is in fact an imitation in resemblance of a genuine obligation of the United States. The defendant's intent, demonstrated by his conduct, should have a bearing on whether they were made as imitations of genuine obligations.

Here, as in *Smith,* supra, the exhibits under Count II of the indictment were only partially manufactured and we agree with the Fourth Circuit that there is insufficient resemblance to and imitation of genuine currency to be classed as a counterfeit obligation of the United States.

The Government relies upon United States v. Lustig, 159 F.2d 798 (3rd Cir. 1947), which also involved reproduction of only one side of genuine currency; but the charge there was brought under the predecessor of 18 U.S.C. § 474 which abjures the "possession [of] \* \* \* any obligation or other security made or executed *in whole or in part* after the similitude of any obligation or other security issued under the authority of the United States, with intent to sell or otherwise use the same." (Emphasis added.) Cf. Leib v. Halligan, 236 F. 82 (9th Cir. 1916); United States v. Weber, 210 F. 973 (W.D.Wash.1913). Both the *Leib* and *Weber* cases were prosecuted under the same statute. Section 474 covers a multitude of counterfeiting activities including the printing or photographing or making any reproduction of all "or any part" of a genuine obligation or security of the United States. The history of this legislation is related in United States v. Raynor, 302

---

1. "Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,-000 or imprisoned not more than fifteen years, or both. June 25, 1948, c. 645, 62 Stat. 705." 18 U.S.C. § 472.

U.S. 540, 58 S.Ct. 353, 82 L.Ed. 413 (1938), and it is apparent that section 474 is intended to cover a much broader range of counterfeiting enterprises than the predecessor statutes of sections 471 and 472. Under section 472, upon which this indictment is based, the counterfeit obligation of the United States must be sufficiently complete to be an imitation of and to resemble the genuine article. This is the thesis of the *Smith* decision, with which we agree.

There is, nevertheless, a further complication. During the trial and just after a Government witness had been called to the stand who was prepared to testify regarding the counterfeit character of the various exhibits, the attorney for the defendant (without objection from defendant) and the Government stipulated that the counterfeit federal reserve notes were in fact counterfeit obligations of the United States. Defendant now complains that this stipulation was not justified and that, among other things, it demonstrates the incompetence of counsel. Under our analysis of the exhibits, we think the stipulation was plainly warranted with respect to the two notes which are the subject of Count I—in fact no other reasonable conclusion was possible from the evidence—but that the three partially completed notes referred to in Count II should not have been designated as counterfeits.

■ While we believe the conviction under Count II should be reversed because the offense charged. is not supported by the evidence, we see no infirmity in the conviction under Count I. The joinder of the two charges did not prejudice the defendant because if only

Count I had been prosecuted, the evidence regarding the possession and surrepetitious attempt to dispose of the Count II exhibits would still have been admissible on the issue of defendant's guilty knowledge. All the exhibits, to the extent of their reproduction, were similar in color and appearance and seem to have been reproduced by the same process.

■ We cannot permit defendant to challenge the competency of counsel. At arraignment, he insisted on representing himself and the presiding judge appointed an attorney merely to act in an advisory capacity. Before trial, Appellant prepared and presented various handprinted motions and petitions and after trial, he again handled his own documents with reference to the appeal. On appeal, he has supplemented in pro. per. the briefs prepared and filed by counsel appointed by this Court. Defendant's complaint of inadequate trial representation is based primarily on the Criminal Justice Act voucher submitted by trial counsel showing no time spent in legal research and no time devoted to interviewing witnesses and other preparation. This is a direct result of the limited nature of the appointment stemming from defendant's waiver of counsel. Defendant deliberately rejected the services of an attorney who would undertake full professional responsibility for his defense. He assumed that responsibility upon himself. He cannot now contend that the advisory services rendered were inadequate or incompetent.

■ We also observe that this Court, in a recent case, United States v. Porter, 431 F.2d 7 (9th Cir., decided August 12, 1970),[2] has suggested that

2. "Defendant did not bring this matter to the attention of the trial court and seek a ruling thereon, either during the course of the trial or on motion for a new trial. Thus he does not complain of any trial court ruling in this regard. Arguments of this kind are ordinarily advanced for the first time in collateral proceedings under 28 U.S.C. § 2255, because they usually require the development of facts outside the trial record.

"Nevertheless, if it was evident during the trial that defendant's legal representation was so inadequate as obviously to deny him his Sixth Amendment right to counsel, or to deny him a fair trial in the due process sense, the failure of the trial court to take note sua sponte of the problem might constitute plain error which may be considered on direct appeal. Moreover, even absent a plain-error factor, this court has, on occasion, examined such

the contention of inadequate representation is not available on direct review absent a record disclosing preservation of the claimed error in the trial court unless the inadequacy of representation was so gross on the face of the record as to constitute a denial of due process in the constitutional sense. Our review of this record shows that appointed trial counsel, acting in an advisory capacity, conducted himself in a thoroughly competent and professional manner.

The judgment of conviction under Count I of the Indictment is affirmed. The judgment of conviction under Count II of the Indictment is reversed.

a contention on the merits in an appeal from a conviction, even where no trial court ruling is complained of. See Bouchard v. United States, 344 F.2d 872, 874– 875 (9th Cir. 1965); Reid v. United States, 334 F.2d 915, 919 (9th Cir. 1964)." United States v. Porter, 431 F.2d 7, 10 (9th Cir., decided August 12, 1970).