**UNITED STATES of America, Appellee,**

v.

**John Joseph CHODOR, Defendant, Appellant.**

**No. 72–1366.**

United States Court of Appeals, First Circuit.

Heard May 8, 1973.

Decided June 13, 1973.

Thomas C. Troy, Dorchester, Mass., by appointment of the Court, for appellant.

Edward J. Lee, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., was on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

Appellant, John Joseph Chodor, was charged in a three count indictment with possession and delivery of certain obligations made after a similitude of $10 Federal Reserve Notes in violation of 18 U.S.C. §§ 472, 473, and 474 (1970). After a jury trial, he was found guilty on all three counts. Since we find no merit in the contentions he raises on appeal, his conviction is affirmed.

From the evidence in the record, the jury could reasonably find the following facts. At approximately 12:30 on the afternoon of December 20, 1971, appellant, accompanied by one Anne Leonard, deposited two suitcases in his cousin's apartment in Dorchester, Massachusetts. On leaving, he told his cousin that he would either return later to pick up the suitcases or would send someone to get them. The suitcases remained in the apartment undisturbed until shortly after 4 p. m. when Anne Leonard arrived in a cab and picked them up. From Dorchester, Leonard proceeded to the airport where she checked the bags with Allegheny Airlines, secured a prepaid ticket for an Allegheny flight to Baltimore, and departed on that flight.

Upon arrival in Baltimore, Leonard directed a cab driver to pick up the suitcases and place them in his cab. Shortly thereafter, she was arrested and the bags

were searched. They were found to contain $133,000 in uncut counterfeit obligations which, aside from the absence of two serial numbers and one seal on their face, resembled $10 Federal Reserve Notes in all significant respects. When questioned, Leonard stated that she resided at 140 "Neva Street," [1] Hyde Park Massachusetts, and that her phone number was 361–4471, a phone listed at 140 Navarre Street in appellant's name. A search of her purse also revealed that she was scheduled to return to Boston on a flight leaving Baltimore at 9:30 p. m. that evening.

At approximately 10 p. m. that same evening appellant was observed at Logan Airport in the vicinity of the arrival gate of the Allegheny flight on which Leonard was booked. After waiting a short period of time, he made a phone call and then returned to the arrival area. Approximately fifteen minutes later he was taken into custody by federal officers and apprised of his rights. Thereafter, although stating that he resided at 140 Navarre Street, Hyde Park, Massachusetts, he denied knowing Anne Leonard. He also claimed to be waiting for his aunt to return from Baltimore, but when the agents suggested that they await for her arrival, he said that he had just received a phone call informing him that she was not coming. When asked why he had returned to the waiting area, he made no response. Finally, when asked if he had had two suitcases in his possession at any time during that day, he said "No."

█ On this background, it is apparent that appellant's initial contention that the government's proof provided an insufficient basis for the jury to infer that he had knowledge of the contents of the suitcases and that he acted with the intent to defraud is not well taken. His possession of the suitcases in the early afternoon, his arrival at the airport when Leonard was due to return, his denial at the time of arrest that he knew Leonard after they both had given apparently the same address as their residence, and his denial of ever possessing the suitcases in question, when considered in the light most favorable to the government, Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), clearly justifies the jury's conclusion that appellant was acting with the requisite knowledge and intent.

██ Appellant's further contention that his conviction under 18 U.S.C. § 474 [2] may not stand because the government failed to establish that he was not in possession of these obligations "under authority from the Secretary of the Treasury or other proper official" suffers from a similar infirmity. In addition to the fact that the government was not required to offer evidence on this issue in establishing the elements of a § 474 offense since "it is incumbent on one who relies on . . . an exception [in a statute] to set it up and establish it," McKelvey v. United States, 260 U.S. 353, 357, 43 S.Ct. 132, 134, 67 L.Ed. 301 (1922), see, e. g., United States v. Ramzy, 446 F.2d 1184, 1186 (5th Cir.), cert. denied, 404 U.S. 992, 92 S.Ct. 537, 30 L. Ed.2d 544 (1971); United States v. Rowlette, 397 F.2d 475, 479–480 (7th Cir. 1968); Chin Gum v. United States, 149 F.2d 575, 577 (1st Cir. 1945), the evidence in the instant record is more than sufficient to support a jury finding that appellant was not in possession of these notes with such authorization. The covert manner in which these notes were

---

1. We take notice that while there is a "Navarre Street" located in the Hyde Park section of Boston, there is no "Neva Street" listed in the postal directory.

2. The paragraph of 18 U.S.C. § 474 under which appellant was indicted provides:
"Whoever has in his possession or custody, except under authority from the Secretary of the Treasury or other proper officer, any obligation or other security made or executed, in whole or in part, after the similitude of any obligation or other security issued under the authority of the United States, with intent to sell or otherwise use the same; . . . ."

transported, appellant's denial of any connection with the suitcases in which the notes were found, the fact that the notes were counterfeit, and, in particular, the testimony of appellant's own witness Raymond Scarino, that he had manufactured these notes in his basement, amply justify the conclusion that appellant did not possess these notes with the Secretary's approval. *See* Koran v. United States, 408 F.2d 1321, 1324 (5th Cir. 1969), cert. denied, 402 U.S. 948, 91 S.Ct. 1603, 29 L.Ed.2d 118 (1971). A directed acquittal was thus not in order.

Finally, appellant's assertion that the trial court erred in failing to rule as a matter of law that the notes in question were not counterfeit because they were lacking "significant particular[s]," United States v. Moran, 470 F.2d 742 (1st Cir. 1972), to wit, two serial numbers and the Treasury Seal on their face, is also unavailing. The proper test for determining what constitutes a counterfeit obligation is, as stated in United States v. Lustig, 159 F.2d 798, 802 (3d Cir. 1947), rev'd on other grounds, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949),

> "whether the fraudulent obligation bears such a likeness or resemblance to any of the genuine obligations or securities issued under the authority of the United States as is calculated to deceive an honest, sensible and unsuspecting person of ordinary observation and care dealing with a person supposed to be upright and honest." [3]

*Accord,* United States v. Johnson, 434 F.2d 827, 829 (9th Cir. 1970); United States v. Smith, 318 F.2d 94, 95 (4th Cir. 1963). In light of the three minor deficiencies of the notes in question, the trial court was clearly correct in submitting to the jury the question of whether these notes were of sufficient

quality to be considered counterfeit. Lastly, given our endorsement of this standard and the fact that the court charged the substance of the *Lustig* test, even assuming that appellant requested an instruction that if the notes lacked "any significant quality" they could not be found to be counterfeit, we cannot agree that the omission of this statement from the charge constituted prejudicial error.

Affirmed.

---

3. We note in passing that the test of what constitutes a counterfeit security or obligation for the purposes of the paragraph of 18 U.S.C. § 474 under which appellant was indicted is less stringent because this provision makes possession of "any obligation or other security made or executed, in whole or *in part*, after the similitude of any obligation or other security issued under the authority of the United States" illegal.