UNITED STATES of America, Plaintiff-Appellee,

v.

Jose MORENO–PULIDO, Defendant-Appellant.

No. 82–1070X.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 13, 1982.

Decided Jan. 4, 1983.

---

Joseph P. Russoniello, U. S. Atty., John C. Gibbons, Chief U. S. Atty., Crim. Div., Patrick Coughlin, San Francisco, Cal., argued, for plaintiff-appellee.

Richard M. Bryan, San Francisco, Cal., for defendant-appellant.

Before WALLACE, KENNEDY and NELSON, Circuit Judges.

NELSON, Circuit Judge:

Appellant seeks reversal of his conviction on four counts relating to the manufacture and sale of counterfeit Immigration and Naturalization Service Alien Registration Receipt Cards (green cards). For the reasons set forth below, we affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

On July 8, 1981, appellant Moreno-Pulido sold to a government informant a counter-

feit green card incorporating a photograph and information supplied by agents of the Immigration and Naturalization Service. On September 3, 1981, and again on September 9, 1981, Moreno-Pulido sold twenty sheets of blank green card forms to the same informant.

On the basis of these transactions, Moreno-Pulido was indicted on four counts. Count One charged the sale of a counterfeit green card in violation of 18 U.S.C. § 1426(b). Count Two charged the manufacture of the card in violation of 18 U.S.C. § 1426(a). Counts Three and Four charged Moreno-Pulido with violating 18 U.S.C. § 1426(b) by selling the blank sheets.

Moreno-Pulido was tried and convicted on all four counts in the trial court. Judgment was entered January 14, 1982, and defendant brings this appeal.

## II. ISSUES

Moreno-Pulido brings three challenges to his conviction. His first and most substantial contention is that 18 U.S.C. § 1426(b) does not cover the sale of uncut sheets of blank counterfeit green card forms. Second, Moreno-Pulido contests the sufficiency of the evidence to support his conviction on the manufacturing count. Third, Moreno-Pulido argues that the District Court's interruptions of defense counsel's final argument deprived him of a fair trial by unfairly discrediting the defense in the eyes of the jury. This opinion will address these contentions in order.

## III. DISCUSSION

A. *Is a Counterfeit Sheet of Blank Green Card Forms a "Counterfeited Instrument [or] Paper" Under 18 U.S.C. § 1426(b)?*

18 U.S.C. § 1426(b) applies criminal penalties to whoever sells any "counterfeited . . . instrument [or] paper . . . authorized by any law relating to naturalization or citizenship or registry of aliens . . . ."[1] Moreno-Pulido was convicted of violating this section by selling blank counterfeited green card forms in uncut sheets. Appellant argues that evidence of the sale of blank sheets of forms was insufficient as a matter of law to sustain his conviction because such sheets are not "counterfeited instruments [or] paper." Since this is a pure question of law, we review de novo the trial court's determination that such a conviction was proper. *Miller v. United States,* 587 F.2d 991, 994 (9th Cir.1978).

A completed green card "is a paper authorized by law relating to the registry of aliens within 18 U.S.C. § 1426(a)," and therefore presumably within § 1426(b). *United States v. Castillo-Felix,* 539 F.2d 9 (9th Cir.1976). The cards sold in this case differ from completed green cards in various ways: first, the six forms printed on each sheet have not been cut apart; second, they have not undergone the procedures necessary to convert a blank form into a useful facsimile of a completed green card—they have not been filled out with identifying information, signed, affixed with a photograph, or laminated. Appellant argues that blank green card forms do not come under the statute because further steps are required before they can serve their ultimate purpose. This fact is not determinative. To allow someone to evade the statute by selling the forms without completing them would establish a loophole the statute's drafters never intended. The record indicates that once a blank document is printed, converting it into a completed

---

1. 18 U.S.C. § 1426(b) provides that: Whoever utters, sells, disposes of or uses as true or genuine, any false, forged, altered, antedated or counterfeited oath, notice, affidavit, certificate of arrival, declaration of intention to become a citizen, certificate or documentary evidence of naturalization or citizenship, or any order, record, signature or other instrument, paper or proceeding required or authorized by any law relating to naturalization or citizenship or registry of aliens, or any copy thereof, knowing the same to be false, forged, altered, antedated or counterfeited . . . [s]hall be fined not more than $5,000 or imprisoned not more than five years, or both.
18 U.S.C. § 1426.

green card requires only simple equipment in common use. A blank green card form is unalterably dedicated to use as a counterfeit. In convicting someone of counterfeiting the form, there is no danger of punishing someone who did not have the intention of making or contributing to the making of a deceptively false green card as there might be, for example, in a case of the sale of paper closely resembling official green card stock. In fact, the possession of a blank green card form without lawful authority is specifically prohibited by 18 U.S.C. § 1426(f).

■ Appellant would have the courts test the sale of blank uncut forms by whether they bear sufficient resemblance to a green card to pass as genuine, a standard they obviously do not satisfy.[2] This position relies on a widely enunciated standard for the quality of reproduction of counterfeited currency under 18 U.S.C. § 472:

> [T]he proper test to be applied is whether the fraudulent obligation bears such a likeness or resemblance to any of the genuine obligations or securities issued under the authority of the United States as is calculated to deceive an honest, sensible and unsuspecting person of ordinary observation and care when dealing with a person supposed to be upright and honest.

*United States v. Lustig,* 159 F.2d 798, 802 (3rd Cir.1947), *rev'd on other grounds,* 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949); *accord, United States v. Grismore,* 546 F.2d 844 (10th Cir.1976) (jury instruction based on *Lustig* proper regarding cut sheets of counterfeit bills); *United States v. Chodor,* 479 F.2d 661, 664 (1st Cir.), *cert. denied,* 414 U.S. 912, 94 S.Ct. 254, 38 L.Ed.2d 151 (1973) (jury instruction based on *Lustig* was proper regarding bills lacking two serial numbers and the Treasury Seal); *United States v. Smith,* 318 F.2d 94 (4th Cir.1963) (faint reverse images on paper too "crude" to be counterfeit).

Appellant's proposed standard would be improper in this case for two reasons. First, completeness in a green card is a more complex issue than completeness in counterfeit currency. An item of currency enables a holder to receive value in exchange. A green card is more like a government check or a U.S. savings bond. Such certificates may need signatures, filled-in blanks or other steps before they can serve their purpose, but a counterfeited check or bond would appear to be a counterfeit before the required information and signatures are included.[3]

Second, the proposed test has been applied in currency cases to test the quality of a counterfeit, not its completeness. There is little in the cases appellant relies on to indicate that the counterfeit label cannot be applied to an incomplete facsimile of a government instrument. *United States v. Lustig,* 159 F.2d 798, 802 (3d Cir.1947), *rev'd on other grounds,* 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949), upheld a jury finding that three reverse impressions were "counterfeit obligations."[4] Three Court of Appeals cases have held that sheets of good quality counterfeit bills need not be cut

---

**2.** Appellant contends the standard for comparison must be a completed green card, because Counts Three and Four of the indictment, whose language the judgment follows, charged the sale of "twenty blank counterfeit Alien Registration receipt cards, Immigration and Naturalization Form I–151." While "twenty *counterfeit blank* Alien Registration Receipt cards, Immigration and Naturalization Form I–151," might have been a better description, "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Fed.R.Crim.P. 52(a).

**3.** If this were not the case, there might be no counterfeiting if one party manufactured the blank form, and then sold it to another party who completed it. For government obligations that require signatures or information to be negotiable, the courts have consistently held that the forging of instruments alone does not constitute counterfeiting. *E.g., Roberts v. United States,* 331 F.2d 502 (9th Cir.1964) (treasury check); *Webster v. United States,* 59 F.2d 583 (8th Cir.), *cert. denied,* 287 U.S. 629, 53 S.Ct. 81, 77 L.Ed. 545 (1932) (Veteran's Bureau check).

**4.** The precedential weight of this holding is minimal since this Circuit in *United States v. Johnson,* 434 F.2d 827 (9th Cir.1970), distinguished *Lustig* on the basis of a change in the statute. *See* note 7 *infra.*

apart for the bills to be counterfeit. *United States v. Moran,* 470 F.2d 742 (1st Cir.1972), presents compelling reasoning that applies equally well to the case at bar:

> Defendant's position, in a nutshell, on this appeal is that a jury could not find that he was "in possession . . . [of a] counterfeited . . . obligation . . . of the United States" (18 U.S.C. § 472) because the $10.00 notes, complete in every other respect, had been printed, and still remained, in sheets of six. We may agree that if the paper was unfinished in any significant particular, it was not yet a counterfeit. The jury was warranted in finding, however, that a snip with a pair of shears was too inconsequential a matter to consider significant. The paper was as readily available as it would have been had it been cut, and then tied in a package. Defendant's point that any purchaser of the uncut sheets would have necessarily known they were not genuine is irrelevant. An illegal sale does not require the purchaser to be duped.

*Id.* at 743; *accord, United States v. Chodor,* 479 F.2d 661, 664 (1st Cir.), *cert. denied,* 414 U.S. 912, 94 S.Ct. 254, 38 L.Ed.2d 151 (1973); *United States v. Brunson,* 657 F.2d 110, 113 (7th Cir.), *cert. denied,* 454 U.S. 1151, 102 S.Ct. 1016, 71 L.Ed.2d 306 (1981).[5]

These cases demonstrate that the *Lustig* test has never been applied as literally as appellant would have it applied here.[6] We therefore hold that a blank green card form can be an "instrument [or] paper . . . authorized by . . . law relating to naturalization or citizenship or registry of aliens . . .," as that phrase is used in 18 U.S.C. § 1426(b).[7] The jury was properly instructed that it could find a violation of that section in the sale of the sheets. Accordingly, we affirm Moreno-Pulido's conviction on Counts Three and Four.

**B. *Sufficiency of Evidence on Count Two—Making a Green Card***

■ Appellant disputes that there was sufficient evidence to support his conviction under 18 U.S.C. § 1426(a) for making a green card. The jury verdict is reviewable under the familiar "substantial evidence" test: "The conviction must be affirmed if reasonable and prudent persons could have concluded that the evidence, taken in the light most favorable to the Government, warranted a finding of guilt beyond a reasonable doubt." *United States v. Kipp,* 624 F.2d 84, 84–85 (9th Cir.1980) (citations omitted). The government's evidence should be

---

**5.** Appellant reads *United States v. Grismore,* 546 F.2d 844 (10th Cir.1976) to hold that uncut sheets of counterfeit bills could not be counterfeit money because in their uncut form they would not pass as genuine. The defendant in *Grismore* had been found with cut counterfeit bills and uncut sheets. The jury had been instructed "that the uncut sheets were not counterfeit as a matter of law," and there was a conviction on the basis of the cut bills. *Id.* at 849. It was the *defendant* who challenged that instruction on appeal, claiming the "instruction created an improper inference that the cut sheets were conclusively counterfeit." *Id.* Whether that instruction was unduly favorable to the defendant was not an issue on appeal.

**6.** Appellant notes that another section, § 1426(f), specifically prohibits the possession of blank forms. That section prohibits the possession of genuine forms provided by the Immigration and Naturalization Service, conduct that would not otherwise be covered by § 1426. The language used in § 1426(b) is considerably broader, and it would be incongruous to require of Congress a specific enumeration of all possible forms at whatever stage of manufacture they may be counterfeited.

**7.** Cases that have overturned convictions because of evidence not good enough to be counterfeit do not contradict this conclusion. *United States v. Smith,* 318 F.2d 94 (4th Cir.1963), held as a matter of law that a poor quality reverse impression was not a counterfeit obligation. But *United States v. Lustig* notwithstanding, *see* note 4 *supra,* it seems obvious that a reverse impression is only a means to a counterfeit obligation, and not the obligation itself. *United States v. Johnson,* 434 F.2d 827 (9th Cir.1970), is similarly explicable. That decision reversed a jury's finding that a photocopy of one side of a bill, made with "bad ink" on poor quality pinkish paper, was a counterfeit. But the decision upheld the conviction relating to two false bills made of similar photocopies of both sides of a bill pasted together on the strength of evidence that they had in fact been accepted by a salesperson. *Id.* at 829. The issue in *Smith* and *Johnson* was plainly one of quality of reproduction, not of the completion of the counterfeiting process.

viewed in the context of the whole record, since the existence of a "mere modicum" of inculpatory evidence would not be "substantial" if there were overwhelming evidence to the contrary. *See Jackson v. Virginia,* 443 U.S. 307, 319–20, 99 S.Ct. 2781, 2789–2790, 61 L.Ed.2d 560, 573–74 (1979).

■ There is evidence in the record that Moreno-Pulido delivered a completed counterfeit green card to the informant within twenty minutes of the time the informant made the request and provided the photograph and information. A search of Moreno-Pulido's bedroom disclosed all of the equipment and supplies necessary for counterfeiting green cards. A reasonable jury could have disbelieved Moreno-Pulido's testimony that an unidentified third person did the actual manufacturing. The evidence presented therefore substantially supports Moreno-Pulido's conviction on the manufacturing count.

C. *Did the District Court's Interruption of Defense Counsel's Summation Deprive Appellant of a Fair Trial?*

■ The district court twice interrupted defense counsel's final argument. Moreno-Pulido claims that the first comment made was erroneous as to the law and that the two interruptions together discredited the defense, denying him due process of law.

In its first interruption, the court contradicted counsel's suggestion that the green card forms could not pass as completed documents and therefore did not fall within 18 U.S.C. § 1426(b). Under the analysis presented in Section A above, defense counsel's argument presented an incorrect interpretation of the statute. The court's interruption was therefore proper to forestall jury confusion on a question of law. *See United States v. Cole,* 491 F.2d 1276, 1278 (4th Cir.1974); *United States v. Patterson,* 470 F.2d 731, 732 (5th Cir.1972), *cert. denied,* 411 U.S. 984, 93 S.Ct. 2279, 36 L.Ed.2d 960 (1973).

The second interruption was also not improper under the circumstances. Defense counsel had been arguing that a "reasonable opportunity to escape compulsion" should be understood in terms of the de-

fendant's "entire life structure," and that a situation that required the defendant to do something like change his residence to avoid having to commit a crime might not afford such a "reasonable opportunity." The court interjected that the court's instructions, and not counsel's statements, established the scope of the duress defense.

■ Interruptions during presentations of counsel are not forbidden, and they may be appropriate where counsel is discussing matters of law whose resolution lies with the court. *See Quercia v. United States,* 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933). While the trial judge's influence on a jury is certainly great, cases that have reversed convictions on the grounds suggested by appellant involve far more serious adverse comments by trial judges. *E.g., United States v. Cole,* 491 F.2d 1276, 1279 (4th Cir.1974) ("It would serve no useful purpose to detail all of the instances of undue interruption nor to point out which, if any, of the incidents alone would require reversal."); *United States v. Guglielmini,* 384 F.2d 602, 604 (2d Cir.1967) ("The record contains numerous instances of [wholly unnecessary] repartee between the judge and defense counsel."). Conversely, the courts have upheld numerous convictions despite judicial intervention more apparently prejudicial than occurred here. *E.g., United States v. Blakey,* 607 F.2d 779, 788 (7th Cir.1979) (Court's suggestion that defense counsel had interrupted one time too many held not prejudicial); *Lacaze v. United States,* 391 F.2d 516, 520 (5th Cir.1968) (court's statement to defense counsel that he was not making a favorable impression on the jury held not prejudicial); *United States v. Thaggard,* 477 F.2d 626 (5th Cir.), *cert. denied,* 414 U.S. 1064, 94 S.Ct. 570, 38 L.Ed.2d 469 (1973) (court's reprimand of defense attorney for treating trial as a game held not prejudicial); *see United States v. Porter,* 441 F.2d 1204, 1215 (8th Cir.), *cert. denied,* 404 U.S. 911, 92 S.Ct. 238, 30 L.Ed.2d 184 (1971) (where the record presented a "strong" case, the trial lasted more than seven weeks and "instances of erroneous comments occupy only brief mo-

ments in the overall proceedings," the jury had not been improperly influenced).

 In this case the judge made two interruptions in defense counsel's summation of a two day trial. These comments were brief, limited to the law, and carefully couched to show respect for defense counsel's role. Appellant concedes that "[t]he record clearly establishes that there was no hostility between counsel and the judge." These remarks did not by any reasonable standard deny Moreno-Pulido's right to due process of law.

## CONCLUSION

Moreno-Pulido was properly convicted under 18 U.S.C. § 1426(b) for selling uncut sheets of counterfeit green cards. There was sufficient evidence to support his conviction on the manufacturing count. Finally, the trial court's interruptions of defense counsel's final argument did not unfairly discredit the defense, denying Moreno-Pulido of a fair trial. Accordingly, Moreno-Pulido's conviction as to all four counts is

AFFIRMED.