UNITED STATES of America, Plaintiff-Appellee,

v.

Nunnally D. BRUNSON, Jr., a/k/a Sonny Brunson, Defendant-Appellant.

No. 80–1782.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 12, 1980.

Decided Aug. 6, 1981.

George Clyde Gray, Gray & Ashley, Indianapolis, Ind., for defendant-appellant.

John J. Thar, Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before FAIRCHILD and PELL, Circuit Judges, and BROWN,* Senior District Judge.

PELL, Circuit Judge.

Defendant Nunnally D. Brunson, Jr. has appealed to this court from a judgment of guilty following a jury trial in which the indictment charged him with various counterfeiting crimes in violation of 18 U.S.C. §§ 471 and 2, 472, 474, and 371. The evidence presented to the jury revealed the following.

## I

In June of 1979, Brunson met with Bruce Abbitt at Abbitt's place of employment, the Insty-Print Shop in Indianapolis, Indiana. At that time, Brunson asked Abbitt if he would like to do some "government work" which at later meetings was clarified to mean the duplication of marriage licenses, birth certificates, inspection stickers, travelers checks, and, eventually, Federal Reserve Notes. It was unfortunate for Brunson that Abbitt immediately took this information to federal and state authorities and

became the Government's chief witness at Brunson's trial. At various times, Brunson told Abbitt that he was going to use the counterfeit money, (1) to sell to a third party, (2) to use in an illegal drug purchase, (3) to buy gifts for his wife, and (4) to "wash" through foreign exchange in Hawaii. Brunson and Abbitt discussed the possibility of making $50 and $100 Notes and, at later times, appellant indicated that he also wished to counterfeit smaller bills in $1, $5, $10 and $20 denominations.

On September 10, 1979, Brunson and Abbitt went to visit Richard Howard's apartment where they picked up photographic plates bearing images of various parts of genuine $100 Notes. At that time, appellant told Howard that he needed the counterfeit bills as front money for a drug deal. Brunson's choice of confidants was again unwise as Howard also became a witness for the Government at Brunson's trial.

Later meetings among Brunson, Abbitt, and Howard resulted in the delivery by Howard of plates for the reproduction of the face, backside, seal and serial numbers of $100 bills. On September 30, 1979, Brunson and Abbitt met at Insty-Print and began printing the counterfeit Notes. At subsequent meetings, Brunson and Abbitt would print separately the various parts of the bills using the plates from Howard.

On October 1, 1979, Brunson provided Abbitt with the ink colors to be used to colortreat the counterfeit bills. After Brunson had approved the green ink Abbitt made from a mixture of the colors, they began to print the backsides of the bills. Brunson then took some of the printed money and cut it into the size of legitimate Notes and informed Abbitt that he might have a second buyer for the counterfeit money.

On October 2, 1979, Brunson was arrested as he left the Insty-Print shop. At the time of the arrest, Special Agents of the United States Secret Service and Indiana State Police Officers seized, pursuant to a valid war-

---

* Judge Wesley E. Brown, Senior District Judge of the District of Kansas, is sitting by designation.

rant, evidence that ultimately was used against Brunson at his trial. From appellant's person, they obtained a roll of cut counterfeit $100 Notes with only the front sides printed yet which were colortreated to appear genuine. From an envelope Brunson was carrying, the agents seized sixteen counterfeit $100 Notes with both the front and backsides printed yet which were not colortreated. From Brunson's car, the agents seized a box containing 2,529 paper sheets, each containing four completed counterfeit $100 Notes. The agents also found in the car offset printing plates bearing the images of $100 Notes, photograph negatives of $100 Notes, and negatives of $1, $5, and $20 Notes. A search of the Insty-Print shop resulted in the seizure of other printing paraphernalia, including the ink used in the counterfeiting, while a search of Brunson's apartment revealed a booklet entitled "The Hows and Why of The Counterfeiter."

As stated previously, the chief Government witnesses at Brunson's trial were co-defendant Howard, who pleaded guilty, and Abbitt, who was not indicted. Brunson's defense consisted primarily of his contention that he did not have the specific intent to defraud anyone with the counterfeit bills as required by the statute, and that his purpose in the activities in question was entirely ennomic. He claimed that he intended only to use the $100 Note facsimiles to decorate his bathroom. Brunson testified that his stories to Abbitt were simply examples of "stringing him [Abbitt] along," and that Abbitt was a gullible person. In rebuttal to this explanation, the Government presented evidence of appellant's alleged prior counterfeiting operations, specifically Brunson's and Howard's prior counterfeiting of concert tickets, raceway gate and garage passes, and inspection stickers and receipts. Brunson conceded that there "may be some merit" in pending state law charges resulting from these prior occurrences.

## II

Brunson raises a number of contentions on this appeal, only two of which, we believe, deserve extended discussion.

He challenges as a misstatement of law an instruction given to the jury by the trial judge which purported to define under what circumstances uncut sheets of paper with the images of counterfeit Notes printed on them could be considered "counterfeit" currency. The instruction provided:

The fact that counterfeit obligations of the United States still remain in sheets does not prevent a finding that the obligations are counterfeit if the jury finds that a snip with a pair of shears is too inconsequential a matter to consider significant.

Appellant challenges the instruction on the basis that it conflicts with the law stated in *United States v. Grismore*, 546 F.2d 844 (10th Cir. 1976), but the Government replies that the instruction is in accord with *United States v. Moran*, 470 F.2d 742 (1st Cir. 1972). This circuit has not yet had the opportunity to rule on this exact issue.

In *Grismore*, the defendant claimed on appeal that the trial court erred in instructing the jury that uncut sheets of counterfeit Notes were *not* "counterfeit" within the meaning of the statute as a matter of law. He argued that the instruction created the improper inference that cut sheets or Notes conclusively would be counterfeit. 546 F.2d at 849. The Tenth Circuit disagreed and upheld the conviction apparently because the evidence included cut bills, rendering the conviction proper even if the instruction was incorrect. Given the circumstances of that case, we do not believe the Tenth Circuit would reach the conclusion that uncut sheets can *never* be considered "counterfeit" as a matter of law. However, to the extent that *Grismore* does stand for that proposition, we must respectfully disagree. We believe the proper standard was set forth in *Moran* where the court stated:

We may agree that if the paper was unfinished in any significant particular, it was not yet counterfeit. The jury was warranted in finding, however, that a snip with a pair of shears was too incon-

sequential a matter to consider significant.

470 F.2d at 743.

In this case, in addition to the challenged instruction, the jury was also instructed that the test of whether the bills were counterfeit was whether they bore such a likeness to genuine currency "as is calculated to deceive an honest, sensible and unsuspecting person of ordinary observation and care when dealing with a person supposed to be upright and honest." Both parties agree that this was a correct statement of the law. *Grismore, supra* at 849; *United States v. Chodor*, 479 F.2d 661, 664 (1st Cir. 1973), *cert. denied*, 414 U.S. 912, 94 S.Ct. 254, 38 L.Ed.2d 151 (citations omitted). Whether the challenged bills are sufficiently complete and similar to genuine United States currency is an appropriate question of fact for the jury to determine, *Chodor, supra* at 664, and does not require the jury to engage in improper speculation or conjecture over which elements are "inconsequential" or whether the appellant intended eventually to cut the bills from the sheets. Counterfeit bills do not have to be perfect or even particularly good reproductions to be illegal as long as the jury reasonably finds that the bills meet the above standard of similitude. *See, e. g., United States v. Turner*, 586 F.2d 395, 397–98 (5th Cir. 1978), *cert. denied*, 440 U.S. 926, 99 S.Ct. 1258, 59 L.Ed.2d 480 (1979) (black and white reproductions printed on one side only were sufficiently authentic to be illegal "counterfeits"); *United States v. Johnson*, 434 F.2d 827 (9th Cir. 1970); and *United States v. Anderson*, 359 F.Supp. 61 (E.D.Ark.1973). In this case, while it is true that the uncut state of the bills may have been an element for the jury's consideration in determining similitude, the combination of the mentioned instructions correctly informed the jury that it could find the uncut bills "counterfeit" if it found that the bills were otherwise sufficiently similar to genuine Notes. Abbitt testified that appellant had already cut some of the bills from their sheets and appellant was, in fact, carrying cut bills at the time of his arrest. Furthermore, the jury was presented with substantial evidence warranting the conclusion that the bills, once cut, would appear sufficiently genuine and thus were "counterfeit." It was within the jurors' province to conclude that the uncut state of the bills, although relevant, was an inconsequential element. In sum, for a violation of the counterfeiting statutes, there is no requirement that the challenged products be paradigmatic likenesses of Bureau of Engraving and Printing perfection. We conclude, therefore, that these instructions were proper and that the jury had an adequate evidentiary basis for its determinations.

### III

■■ Brunson also challenges the fact that he was indicted, *inter alia*, for "aiding and abetting" the counterfeiting while the principal, Abbitt, was not convicted nor even indicted. He relies in this argument on *Shuttlesworth v. City of Birmingham*, 373 U.S. 262, 83 S.Ct. 1130, 10 L.Ed.2d 335 (1963), and claims that because his activities were only ancillary to Abbitt's, he cannot be convicted. The problem with appellant's position is that, as he himself concedes, there is no general rule of law that an aider cannot be convicted where the principal was not convicted. In fact, an aider can be convicted even where the principal is acquitted in light of 18 U.S.C. § 2 which treats aiders and abettors as principals for the purposes of federal law. *Standefer v. United States*, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980). In this case, the evidence established that appellant initially asked Abbitt to print the counterfeit Notes, obtained the plates and ink necessary for the printing, instructed Abbitt on how to print the Notes, was present when Abbitt ran the printing machine, and cut the notes to the appropriate size. He was, essentially, the mastermind behind the entire counterfeiting operation and his assistance went far beyond what we would call "ancillary." His guilt is not purged by the fact that it was Abbitt who actually pushed the appropriate buttons and ran the press. It was done at appellant's request and instruction and with appellant's necessary assistance.

The evidence clearly established that appellant was guilty of exactly the conduct with which he was charged in the indictment: aiding another in the violation of the Federal counterfeiting statute. His arguments to the contrary are without merit.

IV

The remainder of appellant's contentions are equally unpersuasive. Appellant complains that the trial judge erred in admitting the Government's evidence of appellant's prior allegedly criminal conduct relating to counterfeiting after appellant had admitted that conduct on the stand. The evidence, as stated previously, was offered and admitted in rebuttal to appellant's main defense that he did not intend to use the counterfeit money to defraud anyone. The admission for such purposes was clearly proper both because intent was a necessary element of the crime and because of appellant's chosen defense. Fed.R. Evid. 404(b); *United States v. Weidman*, 572 F.2d 1199, 1202 (7th Cir. 1978), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113; *United States v. Semak*, 536 F.2d 1142, 1145 (6th Cir. 1976); *United States v. Onori*, 535 F.2d 938, 943 (5th Cir. 1976).

Similarly, we see no abuse of the trial judge's discretion in his decision that the probative value of the Government's evidence outweighed any unfair prejudicial effect upon appellant. Fed.R.Evid. 403. The fact that a few of the prior acts occurred up to three years prior to trial does not mean as a matter of law that they are too remote in time to be admissible. The trial judge allowed Brunson to reopen his direct testimony to address this evidence prior to the Government's presentation and properly instructed the jury not to convict appellant on the basis of his prior conduct. These clearly were adequate protections.

It also was not reversible error for the trial judge to fail to review and finally rule upon the admissibility of the evidence prior to its presentation to the jury. There is yet no general rule requiring the judge formally to inspect and evaluate specific evidence in detail and explicitly to balance its probative weight against its prejudicial impact prior to its presentation at trial, although we agree that this balancing should be addressed prior to its final admission and should be evident in the record. *United States v. Dolliole*, 597 F.2d 102, 106 (7th Cir. 1979), *cert. denied*, 442 U.S. 946, 99 S.Ct. 2894, 61 L.Ed.2d 318. The record in this case reveals that the judge and both counsel knew and discussed in general and outside the presence of the jury the evidence the Government intended to introduce in advance of its presentation, and that the judge adequately balanced the competing considerations. In these circumstances, no abuse of the district judge's discretion has been established.

Brunson also claims that the Government failed to establish adequately the similitude of his counterfeit bills to genuine obligations. This was a question of fact for the jury. Substantial evidence when viewed in the light most favorable to the Government's position supports the jury's determination, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Furthermore, contrary to appellant's protestations, there is no burden upon the Government to establish that appellant could have succeeded in one of his intended uses for the counterfeit money once it was established to the satisfaction of the jury that he intended to use the money to defraud a third party. This the Government obviously succeeded in doing. The judgment of conviction, therefore, is

Affirmed.