**UNITED STATES of America, Appellee,**

v.

**Kenneth HALL, Appellant.**

No. 86–1159.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 9, 1986.

Decided Sept. 18, 1986.

R. Thomas Day, Asst. Federal Public Deputy, St. Louis, Mo., for appellant.

Steven Holtshouser, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before LAY, Chief Judge, HENLEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

HENLEY, Senior Circuit Judge.

Defendant Kenneth Hall appeals from his conviction for attempting to pass an altered obligation in violation of 18 U.S.C. § 472. Defendant was convicted on one count of a two-count indictment following a jury trial and sentenced to three years imprisonment, all but six months suspended, and a special assessment of $500.00. Defendant argues on appeal that the district court[1] erred in refusing to instruct the jury as requested in his proposed jury instructions one and two. We affirm.

On August 7, 1985 defendant Hall approached Michael Chalmers, a gas station attendant at a Shell Station in St. Louis, Missouri. Hall produced an altered $10.00 Federal Reserve Note which purported to be a $100.00 note and requested Chalmers

---

1. The Honorable George F. Gunn, United States District Judge, Eastern District of Missouri, presiding.

to give him change.[2] Chalmers immediately recognized the note as bogus and suggested that Hall try the Bonafide Station down the street. After Hall left Chalmers alerted Mattie Rochelle Nelson, the cashier on duty at the Bonafide Station, that Hall was coming and would attempt to pass a phony $100.00 note. Chalmers called the police when Nelson reported that Hall was on his way.

Hall attempted to pass the altered note to Nelson at the Bonafide Station and offered to purchase $50.00 worth of merchandise in the process. Nelson immediately recognized the note as being false and pulled it apart in front of Hall. Nelson then kept Hall occupied until the police arrived and arrested him. Hall was indicted on two counts of attempting to pass an altered obligation in violation of § 472. Following a jury trial Hall was convicted on Count II of the indictment for the transaction at the Bonafide Station. This appeal followed.

Hall contends that the district court erred in not reading to the jury defendant's proposed instruction number one which reads:

An item is *an altered obligation of the United States* if it bears such a likeness or resemblance to a genuine obligation of the United States as is calculated to deceive an honest, sensible, and unsuspecting person of ordinary observation and care dealing with a person supposed to be honest and upright.

(Emphasis supplied.) This instruction is substantially the same as that found in E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 52.10 (3d ed. Supp. 1986), with the fundamental difference of the emphasized portion. In the original, the emphasized portion simply reads, " 'counterfeit.' " Further, the instruction is entitled, " 'Counterfeit'—Defined." This instruction has come to be known as the *"similitude"* requirement and is generally given in prosecutions for possession of counterfeit currency. The grand jury in this case, however, did not indict defendant for attempting to pass or possession of a *counterfeit* obligation. The indictment charged defendant with attempting to pass an *altered* obligation of the United States in violation of § 472. In determining whether the similitude requirement applies in this case, we trace briefly the roots of that doctrine.

The similitude requirement appears to have been first stated in a reported decision in *United States v. Sprague*, 48 F. 828, 829 (E.D.Wisc.1882), and later in *United States v. Kuhl*, 85 F. 624, 631 (S.D. Iowa 1898). Both of these cases quoted with approval from an unreported district court manuscript, *United States v. Wilson* (E.D. Ark. date unknown).[3]

In *Kuhl* the defendant was indicted for violating § 5430 of the Revised Statutes and the defendant in *Sprague* was convict-

2. The face of the genuine $10.00 note was altered by adhering with fingernail polish the zeros from another $10.00 note to the left side of the note. Thus, the upper left-hand portion bore the numeral "100" with the two zeros overlapping. The lower left-hand corner bore the numeral "100" with the word "teen" superimposed on the numeral. The right side of the note was altered by cropping it even with the zero of the "10" and then adhering with fingernail polish a portion of another $10.00 note such that an additional zero was added. This created a double border on the right-hand side and the altered note was slightly longer than a genuine note. In all other respects the face of the note was unchanged. It still bore the portrait of Hamilton, the words "TEN DOLLARS" remained at the bottom, and the word "TEN" remained under the right-hand serial number and on the left and right borders of the note. The back of the note simply appeared to be two $10.00 notes overlapped.

3. The *Wilson* similitude jury charge reads in pertinent part:

[I]t is not necessary that the similitude between the false and the true security should be such as to deceive experts, bank officers, or cautious men. It is sufficient if the alleged fraudulent bond bears such a likeness or resemblance to one of the genuine bonds of the United States as to be calculated to deceive an honest, sensible, and unsuspecting man of ordinary observation and care, dealing with a man supposed to be honest.

*Sprague*, 48 F. at 829; *Kuhl*, 85 F. at 631. There are some slight differences in the two versions.

ed of violating the same statute.[4] Section 5430 is a possession offense as is the current version of that section. 18 U.S.C. § 474 (paragraph 5). The similitude jury charge has received general acceptance in § 474 prosecutions. *United States v. Turner,* 586 F.2d 395, 397–98 (5th Cir. 1978), *cert. denied,* 440 U.S. 926, 99 S.Ct. 1258, 59 L.Ed.2d 480 (1979); *Minnella v. United States,* 44 F.2d 48, 49 (8th Cir. 1930). The prosecution in this case, however, arose under § 472, which reads:

> Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.

This statute does not contain the term "similitude" as does § 474, but speaks in more specific terms of falsely made, forged, counterfeited, or altered obligation. The courts have, however, extended the *Wilson* similitude test to § 472 prosecutions in order to define the term "counterfeit."

The earliest application of the similitude requirement to a § 472 prosecution found by the court is the 1963 case of *United States v. Smith,* 318 F.2d 94, 95 (4th Cir. 1963). Smith ran a confidence scheme that involved the sale of a machine to make money. At the time of his arrest Smith had in his possession two slips of paper the size of a $10.00 Federal Reserve note. The front of each note bore a faint, reverse facsimile, of a Federal Reserve note. The backs were blank. The court relied on a dictionary definition of counterfeited to mean "imitated, simulated, feigned or pretended," *Smith,* 318 F.2d at 95 (citing, 2 Oxford Dictionary 1066 (1933 ed.)), and

adopted the *Wilson* similitude test to find as a matter of law that the two slips of paper were not counterfeits. *Smith,* 318 F.2d at 95. Thus, the *Wilson* similitude test has come to be used as a definition of the term "counterfeit" in § 472. *Federal Jury Practice and Instructions* § 52.10; *United States v. Brunson,* 657 F.2d 110, 114 (7th Cir.1981), *cert. denied,* 454 U.S. 1151, 102 S.Ct. 1019, 71 L.Ed.2d 306 (1982); *Turner,* 586 F.2d at 398 n. 7; *United States v. Chodor,* 479 F.2d 661, 664 (1st Cir.), *cert. denied,* 414 U.S. 912, 94 S.Ct. 254, 38 L.Ed.2d 151 (1973); *United States v. Johnson,* 434 F.2d 827, 829 (9th Cir. 1970).

Significantly, all these cases contain two very important characteristics. First, they involved "counterfeit" obligations of exceptionally poor quality or varying degrees of completeness. Thus, these cases called for a clear definition of what was meant by counterfeit. Second, the cases also involved possession offenses rather than passing or attempting to pass offenses. This distinction is important because all violations of § 472 require an intent to defraud. In a possession offense the intent to defraud is difficult to prove when the quality of the counterfeit is poor. The importance of these characteristics as they relate to the criminal intent required to sustain a conviction under § 472 was recognized by the Ninth Circuit. In discussing some very poor, apparently unfinished, "counterfeits" found in a defendant's possession, the court wrote:

> There is no evidence that defendant intended to use, pass or utter them as genuine, a kind of evidence which we think is important in cases involving bad or borderline counterfeits not only on the issue of intent to defraud but on the

---

4. Section 5430 reads:

Every person ... who has in his *possession* or custody, except under authority from the secretary of the treasury or other proper officer, any obligation, or other security, engraved and printed after the similitude of any obligation or other security issued under the

authority of the United States, with intent to sell or otherwise use the same, ... shall be punished....

*Kuhl,* 85 F. at 625 (emphasis supplied). This section has been carried forward virtually unchanged in the current United States Code. 18 U.S.C. § 474 (paragraph 5).

issue of the quality of the counterfeit, that is, whether it is in fact an imitation in resemblance of a genuine obligation of the United States. The defendant's intent, demonstrated by his conduct, should have a bearing on whether they were made as imitations of genuine obligations.

*Johnson,* 434 F.2d at 829.

Prior to passing or attempting to pass the obligation, a violation of § 472 may hinge on the question whether the obligation is in such a state of completion or quality that the jury can (1) conclude that it is a counterfeited obligation, and (2) find the requisite intent to defraud.[5] Similitude has developed primarily as a definition of counterfeit and secondarily as an aid to determining fraudulent intent when the offense is one of possession. Here, the court must determine whether the similitude instruction requested by defendant appropriately relates to a charge of attempting to pass an altered obligation of the United States.

The verb "alter" is defined "to cause to become different in some particular characteristic (as measure, dimension, course, arrangement, or inclination) without changing into something else." *Webster's Third New International Dictionary* p. 63 (1971); *see also Smith v. United States,* 74 F.2d 941, 942 (5th Cir.1935) (alter "means to change without destroying the identity of the thing changed"). The courts have found a variety of changes in a genuine

obligation to amount to an alteration without necessitating an elaboration or definition of the phrase "altered obligation." *See United States v. DeFilippis,* 637 F.2d 1370, 1372–73 (9th Cir.1981) (one-dollar bill with the end of a ten-dollar bill taped over it is altered); *United States v. Drumright,* 534 F.2d 1383, 1385 (10th Cir.) (middle of a one-dollar bill and portions of fifty-dollar bills taped together was an altered obligation), *cert. denied,* 429 U.S. 960, 97 S.Ct. 385, 50 L.Ed.2d 327 (1976); *Barbee v. United States,* 392 F.2d 532, 533 (5th Cir.) (genuine bill with serial number changed is an altered note), *cert. denied,* 391 U.S. 935, 88 S.Ct. 1849, 20 L.Ed.2d 855 (1968); *Smith,* 74 F.2d at 941–42 (split bill with only back remaining is altered); and *Hill v. United States,* 275 F. 187, 188 (7th Cir.1921) (one-dollar note changed to appear to be a ten-dollar note is altered).[6] These cases suggest the central elements for a definition of the phrase "altered obligation:"

(1) The underlying obligation must be a genuine obligation of the United States (in this case, a genuine $10.00 note);

(2) The underlying obligation must be physically changed in some manner (the addition of a portion of another $10.00 note); and

(3) The underlying obligation must retain its essential character (here, it retains the character of an obligation of the United States because it was intended to be used in the same manner but as a higher denomination).

---

5. The court has searched in vain for a reported case in which a conviction for passing or attempting to pass a counterfeit obligation was overturned because the counterfeit obligation failed the similitude test.

6. Both *Drumright* and *Hill* discuss the similitude test as it applies to alterations. Appellant relies on *Drumright* as authority requiring an alteration to pass the similitude test. *Drumright* is not persuasive as the court there merely notes that the obligation passes the similitude test because it was accepted by the victim and is not squarely faced with the question of whether the similitude test need be applied in an alteration case. Conversely, in *Hill* the court rejected an argument that there must be both a material

alteration and also that the obligation pass the similitude test. In *Hill,* as in *Drumright,* the issue may also have been avoided because again the altered bill was successfully passed to the victim. If an altered or counterfeited bill is passed to a victim in such a manner that it is accepted as genuine, the similitude requirement may *ipso facto* be satisfied. To find otherwise could lead to absurd results as suggested in *Hill,* 275 F. at 190–91. Accordingly, *Drumright* adds very little to the analysis while *Hill* merely points to the anomalous results which may occur if the similitude test is blindly expanded from possession of counterfeit cases into other violations of the counterfeiting laws.

An altered obligation simply is not synonymous with an obligation made after the similitude of any obligation of the United States. This search for a legally sufficient definition of the term "altered" as used in § 472 draws the court back to a simple conclusion. We follow the plain meaning of the language used in the statute. While our discussion of the definition of altered vis-a-vis similitude may be important in explaining why a similitude instruction was properly refused, it also demonstrates why no other instruction defining the term was necessary. Not every term or phrase in our criminal statutes possesses some hidden metaphysical legal meaning requiring lengthy instruction for a juror to understand.[7] *See Rimerman v. United States,* 374 F.2d 251, 254-55 (8th Cir.), *cert. denied,* 387 U.S. 931, 87 S.Ct. 2053, 18 L.Ed.2d 992 (1967).

While similitude in a possession case may bear on the requisite criminal intent to defraud, *Johnson,* 434 F.2d at 829, here the overt act of attempting to pass the obligation vitiates the need for similitude to prove such intent. Since this case involves neither mere possession nor counterfeit (as opposed to altered) currency, we find no error in the trial court's refusal to give the defendant's requested instruction number one. The only other instruction complained of here is that the district court erred in refusing to give his proposed instruction number two. This instruction was, however, given in substance with only slight variation in language and form. We therefore find no error in the instructions as a whole.

Accordingly, the judgment of conviction is affirmed.

7. Similitude has come to be synonymous with counterfeit. The need for precision in defining "counterfeit" exists because the process of counterfeiting is ongoing and the legislature has assigned criminal culpability to various stages in the process. Accordingly, more precise definitions are needed in order to properly instruct the jury as to particular actions that may constitute a crime. For example, it is unlawful to possess a similitude or counterfeit with intent to

use it, 18 U.S.C. §§ 472 and 474 (paragraph 5), but it is not always unlawful to possess a likeness. Thus, in a possession offense it may be imperative that a jury be instructed on the definition of similitude. *Johnson,* 434 F.2d at 829; *Wagner v. Simon,* 412 F.Supp. 426, 430 (W.D.Mo.1974), *aff'd,* 534 F.2d 833 (8th Cir.1976). As indicated in text, in a possession case similitude may bear on both definitional and intent aspects.