**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Travis J. WETHINGTON,**
**Defendant–Appellant.**

**No. 97–3204.**

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 8, 1997.

Decided April 10, 1998.

Beth G. Lewis (argued and briefed), Office of Federal Public Defender, Southern District of Ohio, Cincinnati, OH, for Defendant–Appellant.

Anne L. Porter (argued and briefed), Office of U.S. Attorney, Cincinnati, OH, for Plaintiff–Appellee.

Before: MERRITT, JONES, and NORRIS, Circuit Judges.

## OPINION

NATHANIEL R. JONES, Circuit Judge.

Defendant Travis J. Wethington ("Wethington") was convicted following a jury trial of one count of passing a counterfeit federal reserve note and one count of possession of counterfeit Federal Reserve notes in violation of 18 U.S.C. § 472. Wethington claims that the district court erred in denying his motion for judgment for acquittal, arguing that the notes in question were not sufficiently similar to genuine federal currency to be deemed counterfeit under the statute. In the alternative, Wethington argues that the district court erred in refusing to provide an instruction of 18 U.S.C. § 491, passing and possessing paper used as money, as a lesser included offense of the counterfeiting statute. For the following reasons, we affirm the

conviction and find that 18 U.S.C. § 491 is not a lesser included offense of 18 U.S.C. § 472, and therefore the district court properly refused to instruct the jury on the matter.

## I

On July 2, 1996, Wethington used a false $100 bill to pay his tab at a Waffle House restaurant in Butler County, Ohio. Upon receiving the bill, the waitress, 17 year old Ashley Wilcox, brought the bill to the Waffle House manager because it "wasn't right." She noticed that the cut was crooked, the paper was smooth, and the color was "more green" than usual. The manager, Jonathan Kees, noticed that the bill was smooth and the cut was crooked, but that it otherwise appeared exactly like a genuine $100 bill. Because Kees did not want to risk a potentially violent confrontation, he gave Wilcox change to give to Wethington and called the police. Wethington took the change, approximately $95, and left the restaurant.

Wethington walked across the street to the Villager Lodge where he and his cousin had rented a room. Shortly thereafter, Officer Ian Stegmaier drove Wilcox to the parking lot of the Villager Lodge where she identified Wethington as the man who passed the false $100 bill. Officer Stegmaier then took the bill to a nearby Kroger store in order to verify that the bill was false.[1] He then returned to the Villager Lodge and arrested Wethington. After being taken into custody, Wethington consented to the search of his room. Two Secret Service agents conducted the search and found 49 additional false notes with the same serial number as the note passed at the Waffle House.

On July 24, 1996, Wethington was indicted on two counts in the United States District Court for the Southern District of Ohio. Count One alleged knowingly passing a counterfeit Federal Reserve note with intent to defraud, and Count Two alleged knowingly possessing 49 counterfeit Federal Reserve notes with intent to defraud.

A jury trial ensued on October 21, 1996. At trial, Special Agent Richard K. Rathmell of the United States Secret Service gave expert testimony as to the quality of the notes in question. He testified that, while the notes were of below average quality, he had seen much worse. Agent Rathmell was of the opinion that the notes qualified as counterfeit.

Wethington argued that the government did not present sufficient evidence showing that the notes were in fact of sufficient quality to be "counterfeit" under 18 U.S.C. § 472. Additionally, he requested a jury instruction that 18 U.S.C. § 491, passing tokens or paper used as money, is a lesser included offense of § 472 which applies where the paper passed does not qualify as counterfeit.

## II

Wethington raises two issues on appeal. First, Wethington argues that the district court erred in denying his motions for judgment of acquittal. Second, he contends that the district court erred in refusing to instruct the jury on a lesser included offense of passing and possessing paper used as money under 18 U.S.C. § 491. We discuss each argument in turn.

### A

■■■ Wethington argues that the district court erred in denying his motions for judgment of acquittal. The district court properly grants a motion for judgment of acquittal when "the evidence is insufficient to sustain a conviction of such offense or offenses." Fed. R.Crim.P. 29(a). Therefore, the district court properly denies such a motion where "after viewing the evidence in a light most favorable to the prosecution, *any* rational trier of facts could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Gorman,* 807 F.2d 1299, 1303 (6th Cir.1986), *cert. denied,* 484 U.S. 815, 108 S.Ct. 68, 98 L.Ed.2d 32 (1987).

---

**1.** Stegmaier testified that he wanted to take the bill to a bank for verification, however, none were open at that hour. He thus decided to take the bill to a Kroger store because the employees handle money frequently.

■ Wethington asserts that the government failed to present sufficient evidence on which a reasonable juror could find the false bills that he passed and possessed to be counterfeit under the legal definition. In a case of counterfeiting under § 472, the prosecution must prove that a false note passed or possessed is truly counterfeit. Section 472 states:

> Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined under this title or imprisoned not more than fifteen years, or both. 18 U.S.C. § 472.

In order to convict a defendant under § 472, the government must prove 1) the false bill passed or possessed is counterfeit, 2) the defendant intended to use the false bill to defraud, and 3) the defendant passed or possessed the false bill. 18 U.S.C. § 472.

■ A bill is counterfeit only if it possesses similitude: it "bears such a likeness or resemblance to any of the genuine obligations or securities issued under the authority of the United States as is calculated to deceive an honest, sensible and unsuspecting person of ordinary observation and care when dealing with a person supposed to be upright and honest." *United States v. Lustig*, 159 F.2d 798, 802 (3d Cir.1947), *rev'd on other grounds*, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949)(defining similitude under 18 U.S.C. § 474); *accord United States v. Ross*, 844 F.2d 187, 189–90 (4th Cir.1988); *United States v. Brunson*, 657 F.2d 110, 114 (7th Cir.1981); *United States v. Chodor*, 479 F.2d 661, 664 (1st Cir.1973), *cert. denied*, 414 U.S. 912, 94 S.Ct. 254, 38 L.Ed.2d 151 (1973); *United States v. Johnson*, 434 F.2d 827, 829 (9th Cir.1970); *Smith*, 318 F.2d 94, 95 (1963).[2] The determination of whether a bill possesses similitude is a highly fact intensive process.

■ To prove intent to defraud, the government may present evidence that the defendant passed or attempted to pass a false bill. If the defendant is charged solely with possession of a false bill, evidence of similitude is probative of intent to defraud, such that the more similar a false bill is to genuine currency, the more likely the defendant intended to use it fraudulently to procure goods and services. *See United States v. Hall*, 801 F.2d 356, 359–60 (8th Cir.1986)(finding that the similitude requirement does not apply when a defendant is charged with passing an altered note); *see also*, discussion of *Hall*, *infra.*, n.2.

Under *Smith*, the Fourth Circuit applied the similitude standard to § 472 in a counterfeit bill possession case. In that case, the defendant possessed two slips of paper with printing on only one side. *Smith*, 318 at 95. The printing on each slip was faint, and all lettering and images were backwards. *Id.* Based on these facts, the court found that the slips did not qualify as counterfeit because they were "too crude to mislead," and thus reversed the defendant's conviction. *Id.*

More recently, the Fourth Circuit determined in *Ross* that a crude black and white photocopy of only one side of a one dollar bill, inserted into a change machine, was not a "counterfeit obligation" within the meaning of § 472. *Ross*, 844 F.2d at 191. All of the government's witnesses in *Ross* testified that the bill was obviously false and that no reasonable person would be fooled by them. *Id.* at 189. They further stated that although the paper was of poor quality, they did not

---

**2.** As the government mentioned, the Eighth Circuit found that the purpose of the similitude requirement is twofold: 1) it defines "counterfeit;" and 2) it evidences intent to defraud. *Hall*, 801 F.2d at 359. In *Hall*, the court explained that where the defendant has not attempted to pass a false note, which is probative of intent to defraud, and is thus solely charged with possession, the jury must make an inference to find the requisite intent to defraud: the closer the note resembles genuine currency, the more likely the defendant intended to use it fraudulently to receive goods or services. *Id.* at 359–60. However, the *Hall* decision does not affect the analysis in this case. While Wethington's intent to defraud was shown through his passing a false bill, he was charged with passing and possessing counterfeit bills, not altered bills. Therefore, the government was required to show similitude in order to prove that the bills were in fact counterfeit.

need to feel the bill to know that it was false. *Id.* In fact, an arresting officer testified that he could tell the bill was false from a distance of one hundred feet. *Id.* Under these facts, the court decided that the bill was not sufficiently similar to a genuine bill to fool the average observer, and thus it lacked similitude. *Id.* Therefore, the bill was not counterfeit under § 472.

Wethington contends that the bills he passed and possessed were not of sufficient quality to meet the definition of "counterfeit" under § 472. He argues that the government did not present sufficient evidence such that, viewing the evidence and all inferences in the light most favorable to the government, no reasonable person could find that the bills he passed and possessed could fool a reasonable, unsuspicious person of ordinary observation and care. We disagree.

Because determining the existence of similitude is a fact intensive process, the issue must be decided on a case by case basis. In the present case, we note initially that this court has not had the opportunity to view the bills in question, so we must rely solely upon the testimony of the witnesses at trial in determining whether the evidence presented reasonably allowed a jury to determine the bills to be counterfeit. The government provided expert testimony as to the ultimate issue of whether the bills passed and possessed by Wethington qualified as counterfeit. Special Agent Rathmell, testified that in his expert opinion, the bills were in fact counterfeit, although they were of poor quality. Officer Stegmaier, whose eye was likely more discerning than the unsuspecting observer, testified that he was not certain that the bill passed was false. As a result, he sought out more experienced money handlers to verify his suspicion. In addition, the Waffle House waitress and manager who questioned the note's validity still found the note similar enough to genuine currency to discuss "whether or not it was real."

According to trial testimony, the bills, unlike those in *Ross*, were green in color, although not the identical green of genuine

bills, and they were printed on both sides. Unlike those in *Smith*, the printing was not backwards. Thus, viewing all the available evidence in the light most favorable to the government, there was sufficient evidence for a reasonable trier of fact to determine that the bills were similar enough to genuine currency as is calculated to deceive the average observer.

Moreover, the district court heard the witnesses' testimony and was able to view the bills that Wethington passed and possessed. After doing so, the district court concluded that there was sufficient evidence for a reasonable person to believe that the bills were of sufficient quality to pass as counterfeit. The jury, also after hearing the testimony and viewing the bills, concluded that the bills qualified as counterfeit. We find that the government presented testimonial evidence probative of the similitude of Wethington's bills. Further we find that such evidence was sufficient for a rational jury to determine that the average observer would find the bills counterfeit. We therefore affirm the district court's denial of judgment of acquittal.

## B

■ Wethington also argues that the district court erred in not instructing the jury that passing and possessing paper used as money under 18 U.S.C. § 491 is a lesser included offense of the counterfeiting statute, 18 U.S.C. § 472. The district court did not offer such an instruction because it found that § 491 was not a lesser included offense of § 472.

Federal Rule of Criminal Procedure 31(c)[3] and the Supreme Court's ruling in *Schmuck v. United States*, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989), set the standard for determining whether a crime constitutes a lesser included offense of another crime. Rule 31(c) states that a defendant may be convicted of an offense "necessarily included" in the offense charged. Fed. R.Crim.P. 31(c). In interpreting the application of Rule 31(c), the Supreme Court ruled

---

**3.** The defendant may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense. Fed.R.Crim.P. 31(c).

in *Schmuck* that courts apply an "elements" test rather than an "inherent relationship" test to determine whether a given offense is lesser included:

> Under this test, one offense is not 'necessarily included' in another unless the elements of the lesser offense are a subset of the elements of the charged offense. Where the lesser offense requires an element not required for the greater offense, no instruction is to be given under Rule 31(c). *Schmuck*, 489 U.S. at 716, 109 S.Ct. at 1450–51.

Section 491 is entitled Tokens or paper used as money, and reads in pertinent part:

> whoever, being 18 years of age or over, with intent to defraud, makes, utters, inserts, or uses any card, token, slug, disk, device, paper, or other thing similar in size and shape to any of the lawful coins or other currency of the United States ... to procure anything of value, or the use or enjoyment of any property or service from any automatic merchandise vending machine, postage-stamp machine, turnstile, fare box, coinbox telephone, parking meter or other lawful receptacle, depository, or contrivance designed to receive or to be operated by lawful coins or other currency of the United States, shall be fined under this title, or imprisoned not more than one year, or both. 18 U.S.C. § 491.

The district court found that because § 491 requires the government to prove that the perpetrator is eighteen years of age or older, and § 472 has no such element, § 491 fails the *Schmuck* elements test and is therefore not a lesser included offense of § 472. Wethington artfully argues that because § 472 applies to whomever commits the conduct proscribed by the section, regardless of age,

and § 491 only applies to people eighteen and over, § 491 is a subset of § 472. We are not persuaded. Strictly speaking, the element of "eighteen years of age or over" adds an additional burden of proof on the government, taking § 491 beyond the limits of a lesser included offense as defined by the elements test.

However, even if the eighteen or over element did not cause § 491 to fail the elements test, § 491 likely only applies to passing paper as money in the limited context of automatic merchandise vending machines, and other lawful receptacles mentioned in the statute.[4] The placement of the comma after "to procure anything of value," does cause some confusion as to whether the statute creates two different offenses (one being passing paper or tokens to procure anything of value, and the other being using paper or tokens for the use or enjoyment of property from automated vending machines, etc.). However, were there two offenses, the former offense would swallow the latter offense, rendering Congress's careful and lengthy description redundant. One cannot rationally conclude that procuring the use or enjoyment of goods or services from the enumerated devices is not procuring something of value.

Accordingly, we find that passing paper used as money under 18 U.S.C. § 491 is not a lesser included offense of passing and possessing counterfeit notes under 18 U.S.C. § 472. Therefore, the district court properly refused to instruct the jury on such an offense. We thereby **AFFIRM**.

---

4. Justice Brennan, in his partial concurrence and dissent in *Regan v. Time, Inc.*, 468 U.S. 641, 659, 104 S.Ct. 3262, 3272, 82 L.Ed.2d 487 (1984), agreed with our interpretation of § 491. He stated his interpretation of the scope of § 491 in a footnote: "to make, use, or pass any 'thing similar in size and shape' to United States currency in order to 'procure anything of value' *from any machine or other device* designed to receive or be operated by lawful currency." *Id.* at 686, n. 25, 104 S.Ct. at 3287, n. 25 (citation omitted)(emphasis added). Further, even the *Ross* court treated § 491 as if applicable only to the use of currency in mechanical devices or receptacles:

> It refers to the use of any "paper, or other thing similar in size and shape to any of the lawful coins or other currency of the United States, ... to procure anything of value, ... from any ... lawful receptacle, depository, or contrivance designed to receive or be operated by lawful coins or other currency of the United States." *Ross*, 844 F.2d at 191 (citation omitted).

The *Ross* court apparently discussed the possible applicability of § 491 where the false note used failed the similitude requirement defining "counterfeit" in § 472 because the defendant was inserting the false note into a change machine. *Id.* at 188.