**UNITED STATES of America, Plaintiff,**

v.

**Jean WABO, Assani Mara, a/k/a "Hassan" Jacques Tayou Tapchom, a/k/a "Tayou Tamchom," and Rostand Spencer Djeunang Tchinda, Defendants.**

**No. CR. 03–436(FSH).**

United States District Court, D. New Jersey.

Nov. 5, 2003.

Robert W. Ray, Pitney, Hardin, Kipp & Szuch, LLP, Morristown, NJ, Robert Joseph Fettweis, Wolf, Block, Schorr and Solis–Cohen LLP, Roseland, NJ, Richard Thomas Philips, W. Orange, NJ, for Defendants.

Richard E. Constable, United States Attorney's Office, Newark, NJ, for Plaintiff.

### *OPINION & ORDER*

HOCHBERG, District Judge.

This matter comes before the Court upon Defendants Assani Mara and Jacques Tayou Tapchom's Motions to Dismiss the Superseding Indictment and Defendant Tapchom's Motion for a Bill of Particulars. This Court has reviewed the submissions of the parties and has heard oral argument.

*Background*

Defendants are accused of employing a scheme to convince unsuspecting investors that, through a chemical dye process, Defendants could produce replicas of genuine $100 bills by copying the images of the real United States currency onto specially treated United States Treasury paper. In reality, the "new" bills were genuine United States currency which Defendants had chemically blackened and then cleaned to produce realistic "counterfeit" bills. The

"realistic" fakes were, of course, real. The blackening of genuine United States currency was essential to lure prospective victims into investing their money in Defendants' "black money scam."

*Defendants' Motion to Dismiss the Superseding Indictment*

The Superseding Indictment charges Defendants Mara and Tapchom with the conspiracy: (1) to violate 18 U.S.C. § 471, by altering United States currency with intent to defraud and (2) to violate 18 U.S.C. § 472, by possessing altered United States currency with intent to defraud. The Superseding Indictment also charges Defendant Mara with the substantive offense of violating 18 U.S.C. § 472 by possessing altered United States currency with intent to defraud.

18 U.S.C. § 471 provides in relevant part: "Whoever, with intent to defraud, ... **alters** any obligation or other security of the United States, shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S.C. § 471 (emphasis added). Similarly, 18 U.S.C. § 472 provides:

> Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or **altered** obligation or other security of the United States, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 472 (emphasis added).

Defendants argue that the Superseding Indictment fails to state either a conspiracy or substantive offense involving "alteration" of an "obligation or other security." Defendants contend that this Court must first look to the meaning the word "altered" in the statutes. In particular, Defendants allege that the construction of that term as used in the Superseding Indictment suggests an ambiguity in its meaning and is contrary to the intent of Congress.

In *United States v. Hall,* the Eighth Circuit analyzed the meaning of the word "altered" within the context of 18 U.S.C. § 472. *United States v. Hall,* 801 F.2d 356, 360 (8th Cir.1986). This Court also finds that the term is not ambiguous. The *Hall* court began its analysis by looking to a dictionary definition of the word "altered": "The verb 'alter' is defined 'to cause or become different in some particular characteristic (as measure, dimension, course, arrangement, or inclination) without changing it into something else.' " *Hall,* 801 F.2d at 359 (citing *Webster's Third New International Dictionary* 63 (1971); *Smith v. United States,* 74 F.2d 941, 942 (5th Cir.1935) ("alter means to change without destroying the identity of the thing changed")); *see also Webster's New World Dictionary* 40 (3d ed.1984) (alter defined as "to make different in details but not in substance; modify").

The *Hall* court noted instances in case law where an alteration was found. *Hall,* 801 F.2d at 359. *See United States v. DeFilippis,* 637 F.2d 1370, 1372–73 (9th Cir.1981) (one-dollar bill with a ten-dollar bill taped over it is altered); *United States v. Drumright,* 534 F.2d 1383, 1385 (10th Cir.1976) (middle of a one-dollar bill and portions of a fifty-dollar bill taped over it is altered); *Barbee v. United States,* 392 F.2d 532, 533 (5th Cir.1968) (genuine bill with serial number changed is an altered note); *Smith,* 74 F.2d at 941–42 (split bill with only back remaining is altered); and *Hill v. United States,* 275 F. 187, 188 (7th Cir.1921) (one-dollar note changed to appear to be a ten-dollar note is altered). *Id.* In *Hall,* a ten-dollar bill changed to appear to be a hundred-dollar bill was held

to be altered. *Id.* at 357. The *Hall* court continued:

> These cases suggest the central elements for a definition of the phrase "altered obligation": (1) The underlying obligation must be a genuine obligation of the United States ...; (2) The underlying obligation must be physically changed in some manner ...; and (3) The underlying obligation must retain its essential character ....

*Id.* at 359.

In *Errington v. Hudspeth*, the Tenth Circuit found an alteration of an obligation existed where a United States sixteen cent special delivery air-mail postage stamp was tinted and colored green with the intent and purpose of creating a fictitious value over and above its true value. *Errington v. Hudspeth*, 110 F.2d 384, 385 (10th Cir.1940). In this case, the altered currency is not itself passed in exchange for a thing of value; rather, it is altered as part of a scheme to defraud victims into investing in a "super real counterfeit" factory.

■ The Government has a valid interest in guarding against fraudulent misuse of its services, even if the fraud may never injure the Government itself. *Barbee*, 392 F.2d at 536. In *Barbee*, where defendants altered the serial numbers and other markings on one United States currency to correspond with another to convince unsuspecting victims to invest in a counterfeiting scheme, the Fifth Circuit found the defendants guilty of possession of altered currency, even though the Government was not directly injured (since the defendants never intended to produce any counterfeit notes or even to pass the altered notes). *Id.* at 533. Courts have reasoned that because attacks upon the physical integrity of its currency may undermine the public trust in its economic standard, the Government may pass laws to discourage such attacks. *See United States v. Raynor*, 302 U.S. 540, 542–46, 58 S.Ct. 353, 82 L.Ed. 413 (1938) (discussing at length the legislative policy behind 18 U.S.C.A. § 264 (an anti-counterfeiting statute), under which the Supreme Court affirmed the conviction of defendants who were found guilty for possessing paper closely resembling United States Treasury paper). The Fifth Circuit in *Barbee*, citing *Brooks v. United States*, 76 F.2d 871 (5th Cir.1935), held that "[t]he manifest object of the statute here involved is to protect against all attempts at fraud upon the genuine monetary obligations or securities of the United States." *Barbee*, 392 F.2d at 537.

■ The alteration need not be one which destroys or impairs the validity of the obligation. *Errington*, 110 F.2d at 386, citing *Foster v. United States*, 76 F.2d 183, 184 (10th Cir.1935) (citations omitted). In *Foster*, the Tenth Circuit affirmed the convictions of defendants who altered the serial number, check letter and face plate number on a United States five-dollar bill for the purpose of luring victims to invest in a non-existing counterfeiting scheme. *Foster*, 76 F.2d at 184. It is enough if an alteration is made in furtherance of a scheme to defraud, and it is not necessary that the United States be the intended or actual victim of the scheme. *Id.* An alteration made as a material part of a scheme to defraud any person comes within the terms of the statutes. *Id.* The test, therefore, is whether the alterations in question were material to a scheme to defraud, and that is a question for the jury.

Defendants contend that in the "black money scam" process, they completely defaced the United States currency to the point of obliteration. The completely defaced currency, they contend, is therefore not "altered," and the temporary blacken-

ing of currency does no more than to make genuine United States currency resemble scraps of black paper. Finally, according to the Defendants, the temporarily blackened currency was not the means of effecting the fraud but rather the sleight of hand.

Where the Defendants are charged with the dyeing and coloring of an obligation as one step in a fraud scheme to create fake "realistic" counterfeit money, this Court finds that Defendants' activities could be found by a reasonable jury to constitute "alterations" within the scope of §§ 471 and 472, consistent with *Barbee* and *Hall*. Defendants assert that it is the sleight of hand switch of real currency for worthless scraps, and not the purportedly "altered" currency, that is material to the alleged scheme. However, it is not simply the switch, but also the blackened United States currency that facilitates the sleight of hand. Without the blackened United States currency, the Defendants would not have had an object to switch and thereby defraud the unsuspecting investors. A reasonable jury could find that the alteration was material to the scheme. It does not matter whether the United States was directly injured by Defendants' scheme. *Barbee*, 392 F.2d at 536. The indictment is valid where the Government has an interest in guarding the integrity of its obligations against alterations used in fraud schemes involving United States currency.

*Defendant Tapchom's Motion for a Bill of Particulars*

■ A bill of particulars is designed to "inform the defendant of the nature of the charges brought against him to adequately prepare his defense, to avoid surprise during the trial." *United States v. Addonizio*, 451 F.2d 49, 63–64 (3d Cir.1971). The Third Circuit noted that a bill of particulars becomes necessary when the indict-

ment itself is too vague and indefinite for such purposes. *Id.* A bill of particulars should be granted when the deficiency of the indictment in providing factual or legal information leads to prejudicial surprise at trial or to a significant impairment of the defendant's ability to prepare his case. *United States v. Rosa*, 891 F.2d 1063, 1066–67 (3d Cir., 1989).

■ In the instant case, the Superseding Indictment contains sufficient factual and legal information for the defense to prepare its case. Although the victims are identified by initials, it is not essential that an indictment identify victims by their given names. The request for a bill of particulars will be denied.

Accordingly, **IT IS** on this 5th day of November 2003

**ORDERED** that Defendants Mara and Tapchom's Motions to Dismiss the Superseding Indictment are **DENIED**; and is it further

**ORDERED** that Defendant Tapchom's Motion for a Bill of Particulars is **DENIED.**