

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-17-2005

# USA v. Waalee

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2178

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Waalee" (2005). *2005 Decisions*. Paper 1176.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1176

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-2178
_____

UNITED STATES OF AMERICA

v.

LUTFEE ABDUL WAALEE,
a/k/a Lloyd Anthony Hughes

Lutfee Abdul Waalee,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 02-cr-00195)
District Judge:  Honorable Gary L. Lancaster
_____

Submitted Under Third Circuit LAR 34.1(a)
May 12, 2005

Before:  SLOVITER, FISHER and ALDISERT, *Circuit Judges*.

(Filed: May 17, 2005)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Defendant Lutfee Abdul Waalee, a/k/a/ Lloyd Anthony Hughes, was convicted by a jury of two counts of bank fraud in violation of 18 U.S.C. § 1344 (Counts I and II), and one count of possessing and negotiating a fictitious obligation in violation of 18 U.S.C. § 514(a) (Count V). After an unsuccessful post-trial motion for a new trial, Mr. Waalee was sentenced to three 36-month terms of imprisonment to run concurrently, and ordered to pay $9,041.26 in restitution and serve a five-year term of supervised release following release from imprisonment. On appeal, Mr. Waalee challenges the sufficiency of the evidence on Counts II and V, contends that a new trial on Count V is warranted due to an insufficient jury instruction, and argues that the District Court, during sentencing, erred in its loss calculation under the United States Sentencing Guidelines. We will affirm the judgment of conviction, but vacate the sentence and remand for further sentencing in light of *United States v. Booker*, 543 U.S. —, 125 S. Ct. 738 (2005). Because the facts and proceedings below are known to the parties, we focus here on the rationale for our decision.

I.

On a challenge to the sufficiency of the evidence, this Court reviews the evidence in the light most favorable to the government, and must affirm if a rational trier of fact

2

could have found the defendant guilty beyond a reasonable doubt. *United States v. Shambry*, 392 F.3d 631, 634 (3d Cir. 2004).[1]

Counts II and V charged offenses related to Mr. Waalee's conduct in depositing a $25 million "certified tender of payment" (herein referred to as the "$25 million instrument") into an account at Citizen's East Community Development Federal Credit Union. Both counts required the government to prove intent to defraud. This element is met "if an individual commits an act that could put the bank at risk of loss." *United States v. Khorozian*, 333 F.3d 498, 505 (3d Cir. 2003). In considering whether a defendant acted with intent to defraud, a jury is entitled to examine the "entire circumstances of [a] defendant's conduct." *United States v. Thomas*, 315 F.3d 190, 202 (3d Cir. 2002) (internal citation omitted).

Mr. Waalee contends the evidence was insufficient to prove intent to defraud for two reasons: one, it shows that his conduct was intended, not to defraud, but only "to protest," "to showboat," and "to proselytize" in conjunction with his advocacy of the so-called "redemption theory"[2] and two, that his conduct could not possibly have put the

---

[1]Although Mr. Waalee appears to invoke plenary review on the theory that we must engage in statutory construction of 18 U.S.C. §§ 1344 and 514 to resolve his contentions, we believe the elements of the crimes charged under these statutes are well settled and that his challenges are more appropriately characterized as challenges to the sufficiency of the evidence.

[2]Redemption theory, as best explained by the government, appears to hold that a birth certificate is a negotiable instrument which the holder may redeem for value from the federal government. Mr. Waalee testified at trial that he understands redemption theory to rest on the premise that in 1933, Congress took the United States into

3

credit union at risk because his story and the $25 million instrument itself were too preposterous to have been taken seriously. The evidence, however, was easily subject to an adverse interpretation by a rational trier of fact. Mr. Waalee testified during cross-examination that he did not offer the $25 million instrument as a joke and that he actually wanted to obtain the money. The $25 million instrument moreover carried numerous indicia of a genuine check – it was printed on common check stock in the size of a typical check, displayed the dollar amount numerically and in long-hand, and included a signature line, check number, "pay to the order of" line, payer line and routing number – and thus was evidence of Mr. Waalee's intent to defraud. Additionally, the evidence showed that, although the credit union immediately thought the $25 million instrument suspicious, it also opened an account for Mr. Waalee, accepted the instrument for deposit and provided a receipt. Overall, the evidence of record is sufficient to support a finding of intent to defraud.

Count II, charging an offense under 18 U.S.C. § 1344, required the government to prove that Mr. Waalee engaged in a "scheme to defraud." This Court has defined "scheme" in the bank fraud context as "any plan, pattern or cause of action, including false and fraudulent pretenses and misrepresentations, intended to deceive others in order to obtain something of value, such as money from the institution to be deceived," and has

bankruptcy, suspended the gold standard and adopted a paper standard, all in violation of the U.S. Constitution, which in turn means that all money became unlawful or "fiat" money; birth certificates then providing the backing for this fiat money.

4

further instructed that scheme to defraud is determined by whether "the scheme demonstrated a departure from fundamental honesty, moral uprightness, or fair play and candid dealings in the general life of the community." *Thomas*, 315 F.3d at 195, 196 (internal citations omitted).

Mr. Waalee, borrowing his conception of a scheme to defraud from case law addressing mail and wire fraud, argues there was insufficient evidence to prove this element because the credit union was not fooled by the $25 million instrument and thus, no person of "ordinary prudence or comprehension" would have been deceived. We need not determine whether this conception of scheme to defraud applies in a bank fraud context as we have little difficulty finding sufficient evidence on this record of a plan or pattern of activity directed at obtaining money from the credit union. Again, it is important that Mr. Waalee testified as to his firm belief in redemption theory, and explained his considerable efforts in preparing instruments with indicia of genuineness. He appeared at the credit union on numerous occasions to complete the transaction and did so after his efforts to fool other institutions with similar instruments had failed or were being questioned. In the circumstances of this case, if Mr. Waalee did not depart from fundamental honesty, moral uprightness, fair play and candid dealings, it is difficult to understand what conduct would constitute such a departure. *See United States v. Schwartz*, 899 F.2d 243, 247 (3d Cir. 1990) (rejecting a sufficiency of the evidence challenge to a bank fraud conviction under similar reasoning).

Count V, charging an offense under 18 U.S.C. § 514(a), required the government to prove that the false or fictitious instrument had the appearance of "an actual security or other financial instrument." In *United States v. Howick*, 263 F.3d 1056, 1068 (3d Cir. 2001), we endeavored to provide some meaning to the operative phase:

> An unlawful fictitious obligation ... is one that appears to be 'actual' in the sense that it bears a family resemblance to genuine financial instruments. The offending document must, in other words, include enough of the various hallmarks and indicia of financial obligations so as to appear to be within that class. The test, then, is not whether the document is similar to any financial obligation in particular, but whether taken as a whole it is apparently a member of the family of 'actual ... financial instrument[s]' in general.

(footnote omitted, brackets in the original).

Mr. Waalee contends that, because no reasonable person would have been deceived by the $25 million instrument (which he characterizes as of "poor quality and unprofessional appearance"), and indeed the credit union was not so deceived, this element was not met. We reject this argument, however. As noted, the $25 million instrument carried numerous indicia of a genuine instrument, and Mr. Waalee admitted on cross-examination that he took steps to produce a quality instrument, one which he did not consider a joke. Further, the credit union, while suspicious, accepted and processed the instrument to a certain point. On this record, there is clearly sufficient evidence to support a finding that the $25 million instrument had the appearance of "an actual security or other financial instrument."

6

II.

The District Court instructed the jury that, in order to convict on Count V under 18 U.S.C. § 514(a), it must find that the $25 million instrument "appeared to be or was represented to be an actual financial instrument issued by the United States government but was not." After conviction, Mr. Waalee filed a motion for a new trial, contending that the District Court erred in not further explaining this element to the jury. That motion was denied, and Mr. Waalee presses this argument again on appeal.

We review jury instructions "to determine whether, 'taken as a whole, they properly apprized the jury of the issues and the applicable law.'" *United States v. Yeaman*, 194 F.3d 442, 452 (3d Cir. 1999) (quoting *Dressler v. Busch Entertainment Corp.*, 143 F.3d 778, 780 (3d Cir. 1998) (internal quotation omitted)). "The issue is 'whether, viewed in light of the evidence, the charge as a whole fairly and adequately submits the issues in the case to the jury.'" *United States v. Thayer*, 201 F.3d 214, 221 (3d Cir. 1999) (quoting *United States v. Zehrbach*, 47 F.3d 1252, 1264 (3d Cir. 1995) (internal quotation marks omitted)).

We find no error. The District Court's jury instruction mirrored the terms of the statute, and the phase at issue involves plain language within the common understanding of a juror. *See United States v. Hall*, 801 F.2d 356, 360 (8th Cir. 1986) (noting that "not every term ... in our criminal statutes possesses some hidden metaphysical legal meaning requiring lengthy instruction for a juror to understand."). Moreover, we are satisfied that

the record as a whole, which included the government's efforts to identify the hallmarks of legitimate financial instruments as a point of comparison to the $25 million instrument here, otherwise provided sufficient explanation of this element.

Accordingly, we will affirm the convictions on Counts II and V.

III.

Mr. Waalee contends that the District Court erred as a matter of law when, in sentencing, it included the amount represented by the $25 million instrument in its calculation of loss under U.S.S.G. § 2B1.1(b) when, according to Mr. Waalee, that amount constituted neither actual nor intended loss. Having determined that the sentencing issues raised are best determined by the District Court in the first instance, we will vacate the sentence and remand for re-sentencing in accordance with *Booker*.